UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN J. RIGAS and TIMOTHY J. RIGAS,

        Petitioners,

    -against-

UNITED STATES OF AMERICA,

        Respondent.
-----------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/14

11-CV-6964 (KMW)
ORDER

      Petitioners John and Timothy Rigas ("Petitioners") have moved for discovery in connection with their petition to vacate, set aside, or correct the sentences they received in *United States v. Rigas*, 02-CR-1236.

      Discovery is not as of right in habeas actions. Instead, a habeas petitioner must show "good cause" before a court will authorize discovery. 28 U.S.C. § 2255; Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. "Good cause" is satisfied "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief.'" *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see, e.g., Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003). "[T]he scope and extent of such discovery is a matter confided to the discretion of the District Court." *Bracy*, 520 U.S. at 909.

      Petitioners' habeas raises two general claims, and they seek discovery on both. First, Petitioners contend that the prosecution violated Petitioners' *Brady* rights. *See Brady v Maryland*, 373 U.S. 83 (1963). Second, Petitioners argue that the prosecution unconstitutionally interfered with Petitioners' defense by, among other things, coercing Adelphia to withdraw

1

advancement of legal fees to Petitioners and preclude Petitioners from accessing critical witnesses and evidence.

The Court finds that Petitioners have made sufficiently "specific allegations" to demonstrate "good cause" for some discovery in this action. *Bracy*, 520 U.S. at 908–09. The Court has reviewed Petitioners' specific discovery requests, (*see* Pet'rs' Mot. for Discovery, Exs. A–C), and made tentative revisions to their scope. The Court's revisions are attached to this Order. The Court, in its revisions, sought to limit initial discovery to those requests that are most central to Petitioners' claims, while reducing the burden on third-parties. Initial discovery may reveal that additional discovery, beyond what is proposed here, is warranted. To the extent not included in Petitioners' discovery requests, as modified, discovery shall include notes taken by lawyers at Buchanan Ingersoll during the prosecution's meeting with Carl Rothenberger, as discussed in Petitioners' letter to the Court, dated January 29, 2014. *See* Dkt. No. 31.

Prior to endorsing Petitioners' specific discovery requests, as modified, the Court will permit the Government, by July 1, 2014, to state objections to the specific requests. Petitioners may respond by July 15, 2014, both to the Court's tentative revisions, and to any further changes suggested by the Government.

SO ORDERED.

Dated: New York, New York
  June **19**, 2014

           Kimba M. Wood
           United States District Judge

## EXHIBIT "A"

Document requests directed to the "Government," as defined in B(5), *infra*.

### A.    Document Requests

1.    All documents identifying or concerning each communication, conversation and meeting between the Government and Adelphia relating to the following subject matter:

a.    Whether Adelphia would or should provide advancement, indemnification    *Petitioners* or payment of legal costs to ~~any member of the Rigas Family~~, including    KMW but not limited to how the Government would view such advancement, indemnification or payment of legal costs and the timing and basis of such decision.

b.    Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to any other current or former Adelphia officer, director or employee or prospective Adelphia director in relation to any ongoing law enforcement investigation, including the timing and basis of such decision.

c.    Adelphia's practices with respect to advancement, indemnification or payment of legal costs incurred by its present or former officers, directors or employees in defense of civil, criminal or administrative matters in the past.

d.    What actions Adelphia would, should or did take to assist the government    *Petitioners* in its investigation or prosecution of ~~Rigas Family members~~, and what    KMW requests were made of Adelphia by the Government, including but not limited to what actions the government would consider to reflect Adelphia's "cooperation."

e.    What actions Adelphia would or could take to help it to avoid criminal indictment.

f.    What role, participation or oversight the government would have with respect to the investigation conducted by Adelphia's Special Committee.

g.    Whether Adelphia should prevent or place restrictions upon its employees    *Petitioners* talking to ~~members of the Rigas Family~~ or their representatives, including    KMW but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.

h.    The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether ~~members of the~~ *Petitioners* ~~Rigas Family~~ should resign and/or be terminated as officers or directors of    KMW Adelphia

i. ~~The selection or evaluation of candidates to replace members of the Rigas Family on Adelphia's Board of Directors.~~   KMW

j. Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

k. Whether any law firm retained by Adelphia, ~~the Rigas Family~~ **Petitioners** and/or other   KMW
Adelphia officers and directors should represent, or continue to represent, ~~members of the Rigas Family.~~
Petitioners

l. Whether the government and/or Adelphia would or should oppose, or seek   Petitioners
to enjoin, efforts by ~~any Rigas Family members~~ **Petitioners** to gain access to other   KMW
funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance.

m. Whether the Government had any input into what form Adelphia turned over documents or  other information ~~to the Government and/or~~ to the   KMW
**Petitioners** ~~Rigas Family~~ and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.

n. ~~Whether the Government and Adelphia discussed or reached any understanding as to who would bear the expense of providing documents or information to the Government and/or the Rigas Family and defense counsel.~~   KMW

o. ~~Whether the Government required or encouraged Adelphia to waive and/or raise its attorney-client privilege, including but not limited to whether the Government's position with respect to Adelphia's invocation of the privilege varied depending upon the time frame of the information at issue.~~   KMW

p. ~~Whether the Government would indict, or threaten to indict, any outside director, law firm or accounting firm for Adelphia, including but not limited to Deloitte & Touche and Buchanan Ingersoll, or employee of such law firm or accounting firm.~~   KMW

q. The Holder Memorandum.

r. The Thompson Memorandum.

s. Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the

8117602_2

extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

(i)     Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

(ii)    Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

(iii)   Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

(iv)    Adelphia's willingness to make witnesses available.

(v)     Adelphia's willingness to disclose the complete results of its internal investigation.

(vi)    Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

*identifying or concerning communications, conversations, and meetings between the Government and Adelphia*

(vii)   Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.     All internal Adelphia documents relating to the subject matters identified in requests 1(a)-(s), *as modified*.          *KMW*

3.     All documents relating to conversations between Adelphia and any third party concerning the subject matters identified in requests 1(a)-(s), *as modified*.          *KMW*

4.     All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.     All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.     All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to ~~members of the Rigas Family.~~ *Petitioners.   KMW*

7.     To the extent not already provided in response to the previous requests, all documents identifying strategies or steps taken by Adelphia to avoid indictment.

8117602_2

8.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to refuse indemnification or advancement of defense costs to ~~members of the Rigas Family.~~ Petitioners *KMW*

9.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to ~~members of the Rigas Family~~ by the Rigas Family Entities.    *Petitioners*    *KMW*

10.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

11.    ~~All retention agreements or similar documents that relate to legal representation of Adelphia, the Rigas Family and/or Adelphia's outside directors.~~    *KMW*

12.    Fully unredacted minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.

13.    Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.

14.    Fully unredacted minutes of all meetings of the Special Committee.

15.    Any notes taken by attendees at meetings of the Special Committee.

16.    ~~All documents relating to any determination as to which topics the Special Committee would investigate.~~    *KMW*

17.    ~~All documents relating to information provided to the press concerning the Rigas Family, their resignations, their impending arrest, Adelphia wrongdoings or corrections and/or Adelphia's intent to indemnify Rigas Family members.~~    *KMW*

18.    All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

19.    ~~All documents relating to or reflecting a change in Adelphia's indemnification policies following the resignation of John Rigas and Timothy Rigas as Adelphia officers.~~    *KMW*

20.    ~~All documents relating or referring to a strategy to utilize a public relations firm to discredit the Rigas Family in order to gain favor with the Government or for other reasons.~~    *KMW*

21.    ~~All documents reflecting or relating to a strategy by Adelphia to cut off funds to the Rigas Family in order to gain an advantage in litigation.~~    *KMW*

22.    ~~All documents reflecting or relating to a strategy by Adelphia to make it less likely that individuals designated by the Rigases (including Dan Milliard and Leo Ferraro) would be less likely to accept appointment to Adelphia's Board of Directors, including but not limited to denying the right of indemnification to such individuals.~~    KMW

23.    ~~All documents relating or referring to Adelphia's decision to utilize its own funds to assist the Government in its prosecution of the Rigas Family.~~    KMW

24.    ~~All documents indicating the amount of fees and costs incurred by Adelphia or its Special Committee in connection with the Government's investigation and/or its internal investigation of related party transactions involving the Rigas Family or Rigas Family Entities.~~    KMW

25.    All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

26.    ~~All documents discussing which clients law firms retained by Adelphia, the Rigas Family and/or other Adelphia officers and directors should represent, including but not limited to any document reflecting Government opinion or influence on such decision.~~    KMW

27.    All documents relating to a joint defense between ~~members of the Rigas Family~~ Petitioners and Adelphia.    KMW

28.    ~~To the extent not already provided, all documents relating to the subjects identified in request A.1.a.(i)-(vii) that refer to Adelphia or the Rigas Family.~~    KMW

29.    ~~All notes of interviews conducted by the Government or the Special Committee at the behest of the Government, that have not previously been produced to the Rigases, including but not limited to notes of interviews with Scientific Atlanta and Motorola representatives or personnel.~~    KMW

## B.   Definitions and Instructions

1.    The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.    The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas Family members and entities.   The term Special Committee includes its outside counsel, Covington & Burling.

3.    The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4.    The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5.     The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6.     The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled *"Federal Prosecution of Business Organizations."*

7.     The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *"Principles of Federal Prosecution of Business Organizations."*

8.     A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9.     A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10.    The term "document[s]" includes any writing, charts or data compilation (including electronically stored information), and includes, without limitation: notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments. A draft or non-identical copy is a separate document within the meaning of this term.

11.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12.    The term "to identify" means as follows:

   a.     when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

   b.     when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document; d) the author(s), addressee(s), and recipient(s);

   c.     when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state

the mode of communication; and c) to identify each person who was present or participated therein.

13.    The terms "all", "each" and "any" mean "all/each/any".

14.    The connectives "and" and "or" mean "and/or".

15.    The use of the singular form of any word includes the plural and vice versa.

16.    If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances giving rise to the privilege, and shall also provide the following information in log form:  a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.    Where a requested communication was oral, the subpoenaed entity shall provide the following information:  (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.    Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"

# Adelphia

Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915

Phone   814.274.6356
Fax     814.274.7782

**Memorandum**

| | |
|---|---|
| Date | October 14, 2002 |
| To | All Employees |
| From | Randall D. Fisher, Vice President and General Counsel |
| Regarding | **Contact with members of the Rigas Family, employees of Rigas Family private companies or former employees indicted by the Federal Government** |
| Cc | Erkie Kailbourne, Ron Stengel, Dan Liberatore, Bob Legge, Chris Dunstan |

As a reminder, the Company is still under investigation by the United States
Attorneys office in both New York and Pennsylvania as part of ongoing
investigations, which have resulted in indictments of three members of the Rigas
Family as well as two former executives of Adelphia. Employees should be aware
that the Securities and Exchange Commission has sued Adelphia, the Rigas Family
and the former Adelphia executives for alleged violations of securities laws. The
Company is committed to cooperating with these federal agencies, because it is the
right thing to do and because cooperation with the government will help
recover damages done by the Rigases and will help the Company avoid prosecution.
Adelphia continues to cooperate with these government agencies by reviewing with
the government both its transactions and its communications with members of the
Rigas Family, Rigas Family private entities employees, former Adelphia executives
under indictment or any of their actual or purported counsel or representatives.
Additionally, beginning later this week, the Company will be cooperating with agents
of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia
continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

procedures regarding contact with either any member of the Rigas Family, any employee of any of the Rigas Family private companies, any former executive of Adelphia currently under indictment or any of their actual or purported counsel or representatives..

### Direct Contact

It has come to the attention of the Company that members of the Rigas family have been attempting to contact certain Company employees on various issues. In the case of any contact regarding a business matter between the Rigas Family or Rigas Family private company and Adelphia, whether at work or in a social setting, please refer all contacts to the Legal Department by using the following procedures:

1. If the contact is direct (either in person or by phone) the person making the contact should be told that it would be inappropriate to answer any questions or provide any information.
2. Tell the individual that all contacts should be referred to Leslie Brown, Gene Fitzmaurice or Randy Fisher.
3. The Adelphia employee who has received the contact should both make the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same procedures should be followed for any direct contact from any former Adelphia executive currently under indictment, or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives.

### Social Settings

In addition to the telephone procedures described above, employees should use good judgment if they find themselves in situations where members of the Rigas family, the former Adelphia executives currently under indictment or employees of the Rigas Family private companies are also present (e.g., events, conferences, professional or civic related gatherings, etc.). The company requires that if such meetings occur, employees will not disclose or divulge any confidential information concerning the Company, the ongoing investigation or the bankruptcy proceeding. All employees must report all such contacts with Rigas family members or former Adelphia executives currently under indictment to the Legal Department.

### Indirect Contact

In the case of an indirect contact (such as a voice mail from a member of the Rigas Family) employees should use the following procedures:

1. Report the contact to the Legal Department immediately.
2. Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

Rigas Family Contact Memo 10-12-02

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

government agencies and litigation counsel for review. After any required review, the Legal Department will, on a case-by-case basis, refer the matter to the appropriate business people within the Company for the requisite action on each matter.

### Business Conduct

No employee is authorized to agree to any transaction or course of conduct with the Rigas Family, an employee of a Rigas Family private company, any former Adelphia executive currently under indictment or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives on any issue on behalf of Adelphia, regardless of its size or consequence. All transactions or course of conduct must now be referred to the legal department where any transaction or occurrence may be reviewed by the company's litigation counsel, the United States Attorney's Office in New York and Pennsylvania, the Securities and Exchange Commission as well as representatives of the United States Internal Revenue Service. Once that review has been completed, if appropriate, the matter will then be referred back to the appropriate business people for any required action.

Following these procedures will be in the best interest of the Company. Please ensure that you and those around you implement these procedures immediately. If you have any questions regarding these procedures, please contact Leslie Brown, Gene Fitzmaurice or Randy Fisher in the Legal Department.

3

## EXHIBIT "B"

Document requests directed to Adelphia Communications Corporation and its counsel in

the instant criminal action, including: Boies, Schiller & Flexner LLP; Fried Frank Harris Shriver

& Jacobson; Covington & Burling LLP; Montgomery McCracken Walker and Rhoads LLP;   *KMW*

Orrick Herrington & Sutcliffe LLP; Willkie Farr & Gallagher LLP; Reed Smith LLP; Paul,

Weiss, Rifkind, Wharton & Garrison LLP; Buchanan Ingersoll & Rooney PC, O'Melveny &

Meyers LLP; Phillips Lytle LLP; and Pillsbury Winthrop.

### A.    Document Requests

1.    All documents identifying or concerning each communication, conversation and
meeting between the Government and Adelphia relating to the following subject matter:

a.    Whether Adelphia would or should provide advancement, indemnification   *— Petitioners*
or payment of legal costs to any member of the Rigas Family, including   *kmw*
but not limited to how the Government would view such advancement,
indemnification or payment of legal costs and the timing and basis of such
decision.

b.    Whether Adelphia would or should provide advancement, indemnification
or payment of legal costs to any other current or former Adelphia officer,
director or employee or prospective Adelphia director in relation to any
ongoing law enforcement investigation, including the timing and basis of
such decision.

c.    Adelphia's practices with respect to advancement, indemnification or
payment of legal costs incurred by its present or former officers, directors
or employees in defense of civil, criminal or administrative matters in the
past.

d.    What actions Adelphia would, should or did take to assist the government   *Petitioners*
in its investigation or prosecution of Rigas Family members, and what   *kmw*
requests were made of Adelphia by the Government, including but not
limited to what actions the government would consider to reflect
Adelphia's "cooperation."

e.    What actions Adelphia would or could take to help it to avoid criminal
indictment.

f.    What role, participation or oversight the government would have with
respect to the investigation conducted by Adelphia's Special Committee.

8117602_2

g. Whether Adelphia should prevent/or place restrictions upon its employees talking to ~~members of the Rigas Family~~ or their representatives, including but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.   *Petitioners*   *Kmw*

h. The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether ~~members of the Rigas Family~~ should resign and/or be terminated as officers or directors of Adelphia.   *Petitioners KMW*

i. ~~The selection or evaluation of candidates to replace members of the Rigas Family on Adelphia's Board of Directors.~~   *K MW*

j. Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

k. Whether any law firm retained by Adelphia, ~~the Rigas Family~~ *Petitioners* and/or other Adelphia officers and directors should represent, or continue to represent, ~~members of the Rigas Family.~~ *Petitioners*   *kMW*

l. Whether the government and/or Adelphia would or should oppose, or seek to enjoin, efforts by ~~any Rigas Family members~~ to gain access to other funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance..   *Petitioners kMW*

m. Whether the Government had any input into what form Adelphia turned over documents or other information ~~to the Government and/or to the~~ *Petitioners* ~~Rigas Family~~ and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.   *kMW*

n. ~~Whether the Government and Adelphia discussed or reached any understanding as to who would bear the expense of providing documents or information to the Government and/or the Rigas Family and defense counsel.~~   *KMW*

o. ~~Whether the Government required or encouraged Adelphia to waive and/or raise its attorney-client privilege, including but not limited to whether the Government's position with respect to Adelphia's invocation of the privilege varied depending upon the time frame of the information at issue.~~   *Kmw*

p. ~~Whether the Government would indict, or threaten to indict, any outside director, law firm or accounting firm for Adelphia, including but not~~   *Kmw*

~~limited to Deloitte & Touche and Buchanan Ingersoll, or employee of such law firm or accounting firm.~~  KMW

q.  The Holder Memorandum.

r.  The Thompson Memorandum.

s.  Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

   (i)   Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

   (ii)  Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

   (iii) Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

   (iv)  Adelphia's willingness to make witnesses available.

   (v)   Adelphia's willingness to disclose the complete results of its internal investigation.

   (vi)  Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

*identifying or concerning communications, conversations, and meetings between the Government and Adelphia*

   (vii) Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.  All internal Adelphia documents *relating* to the subject matters identified in requests 1(a)-(s), *as modified*.    KMW

3.  All documents relating to conversations between Adelphia and any third party concerning the subject matters identified in requests 1(a)-(s), *as modified*    KMW

4.  All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.     All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.     All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to ~~members of the Rigas Family.~~ Petitioners    KMW

7.     To the extent not already provided in response to the previous requests, all documents identifying strategies or steps taken by Adelphia to avoid indictment.

8.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to    KMW
refuse indemnification or advancement of defense costs to ~~members of the Rigas Family.~~ Petitioners

9.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to ~~members of the Rigas Family~~ by the Rigas Family    KMW
Entities.                                              Petitioners

10.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

11.     ~~All retention agreements or similar documents that relate to legal representation~~    KMW
~~of Adelphia, the Rigas Family and/or Adelphia's outside directors.~~

12.     Fully unredacted minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.

13.     Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.

14.     Fully unredacted minutes of all meetings of the Special Committee.

15.     Any notes taken by attendees at meetings of the Special Committee.

16.     ~~All documents relating to any determination as to which topics the Special~~    KMW
~~Committee would investigate.~~

17.     ~~All documents relating to information provided to the press concerning the Rigas~~    KMW
~~Family, their resignations, their impending arrest, Adelphia wrongdoings or corrections and/or~~
~~Adelphia's intent to indemnify Rigas Family members.~~

18.    All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

19.    ~~All documents relating to or reflecting a change in Adelphia's indemnification policies following the resignation of John Rigas and Timothy Rigas as Adelphia officers.~~ kmw

20.    ~~All documents relating or referring to a strategy to utilize a public relations firm to discredit the Rigas Family in order to gain favor with the Government or for other reasons.~~ kmw

21.    ~~All documents reflecting or relating to a strategy by Adelphia to cut off funds to the Rigas Family in order to gain an advantage in litigation.~~ kmw

22.    ~~All documents reflecting or relating to a strategy by Adelphia to make it less likely that individuals designated by the Rigases (including Dan Milliard and Leo Ferraro) would be less likely to accept appointment to Adelphia's Board of Directors, including but not limited to denying the right of indemnification to such individuals.~~ kmw

23.    ~~All documents relating or referring to Adelphia's decision to utilize its own funds to assist the Government in its prosecution of the Rigas Family.~~ kmw

24.    ~~All documents indicating the amount of fees and costs incurred by Adelphia or its Special Committee in connection with the Government's investigation and/or its internal investigation of related party transactions involving the Rigas Family or Rigas Family Entities.~~ kmw

25.    All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

26.    ~~All documents discussing which clients law firms retained by Adelphia, the Rigas Family and/or other Adelphia officers and directors should represent, including but not limited to any document reflecting Government opinion or influence on such decision.~~ kmw

27.    All documents relating to a joint defense between members of the Rigas Family and Adelphia.

28.    ~~To the extent not already provided, all documents relating to the subjects identified in request A.1.s.(i)-(vii) that refer to Adelphia or the Rigas Family.~~ kmw

## B.    Definitions and Instructions

1.    The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.    The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas

Family members and entities. The term Special Committee includes its outside counsel, Covington & Burling.

3. The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4 The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5. The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6. The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled *Federal Prosecution of Business Organizations.*"

7. The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations.*"

8. A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9. A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10. The term "document[s]" includes any writing, charts or data compilation (**including electronically stored information**), and includes, without limitation: notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments. A draft or non-identical copy is a separate document within the meaning of this term.

11. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12. The term "to identify" means as follows:

    a.      when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

    b.      when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document, d) the author(s), addressee(s), and recipient(s);

    c.      when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state the mode of communication; and c) to identify each person who was present or participated therein.

13.    The terms "all", "each" and "any" mean "all/each/any".

14.    The connectives "and" and "or" mean "and/or".

15.    The use of the singular form of any word includes the plural and vice versa

16.    If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances giving rise to the privilege, and shall also provide the following information in log form: a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.    Where a requested communication was oral, the subpoenaed entity shall provide the following information: (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.    Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"



Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915

Phone    814.274.6356
Fax      814.274.7782

**Memorandum**

| | |
|---|---|
| Date | October 14, 2002 |
| To | All Employees |
| From | Randall D. Fisher, Vice President and General Counsel |
| Regarding | **Contact with members of the Rigas Family, employees of Rigas Family private companies or former employees indicted by the Federal Government** |
| Cc | Erkie Kailbourne, Ron Stengel, Dan Liberatore, Bob Legge, Chris Dunstan |

As a reminder, the Company is still under investigation by the United States Attorneys office in both New York and Pennsylvania as part of ongoing investigations, which have resulted in indictments of three members of the Rigas Family as well as two former executives of Adelphia. Employees should be aware that the Securities and Exchange Commission has sued Adelphia, the Rigas Family and the former Adelphia executives for alleged violations of securities laws. The Company is committed to cooperating with these federal agencies, because it is the right thing to do and because cooperation with the government will help recover damages done by the Rigases and will help the Company avoid prosecution. Adelphia continues to cooperate with these government agencies by reviewing with the government both its transactions and its communications with members of the Rigas Family, Rigas Family private entities employees, former Adelphia executives under indictment or any of their actual or purported counsel or representatives. Additionally, beginning later this week, the Company will be cooperating with agents of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

**Procedures for Contact from Rigas Family,**
**Private Companies, Indicted Former Employees**
**October 14, 2002**

procedures regarding contact with either any member of the Rigas Family, any
employee of any of the Rigas Family private companies, any former executive of
Adelphia currently under indictment or any of their actual or purported counsel or
representatives..

### Direct Contact

It has come to the attention of the Company that members of the Rigas family have
been attempting to contact certain Company employees on various issues. In the case
of any contact regarding a business matter between the Rigas Family or Rigas Family
private company and Adelphia, whether at work or in a social setting, please refer all
contacts to the Legal Department by using the following procedures:

1. If the contact is direct (either in person or by phone) the person making
   the contact should be told that it would be inappropriate to answer any
   questions or provide any information.
2. Tell the individual that all contacts should be referred to Leslie Brown,
   Gene Fitzmaurice or Randy Fisher.
3. The Adelphia employee who has received the contact should both make
   the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same
procedures should be followed for any direct contact from any former Adelphia
executive currently under indictment, or any of the Rigas Family or these former
Adelphia executives' actual or purported counsel or representatives.

### Social Settings

In addition to the telephone procedures described above, employees should use good
judgment if they find themselves in situations where members of the Rigas family,
the former Adelphia executives currently under indictment or employees of the Rigas
Family private companies are also present (e.g., events, conferences, professional or
civic related gatherings, etc.). The company requires that if such meetings occur,
employees will not disclose or divulge any confidential information concerning the
Company, the ongoing investigation or the bankruptcy proceeding. All employees
must report all such contacts with Rigas family members or former Adelphia
executives currently under indictment to the Legal Department.

### Indirect Contact

In the case of an indirect contact (such as a voice mail from a member of the Rigas
Family) employees should use the following procedures:

1. Report the contact to the Legal Department immediately.
2. Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

Rigas Family Contact Memo 10-12-02

## EXHIBIT "C"

Document requests directed to the Adelphia Recovery Trust, as successor in interest to

Adelphia Communications Corporation.

### A.   Document Requests

1.    Identify all persons or entities employed by or associated with Buchanan Ingersoll & Rooney, P.C., deposed in the action designated *Adelphia Recovery Trust v. Bank of America, N.A., et al.*, No. 05-cv-9050-LMM (S.D.N.Y.).

2.    Copies of all deposition transcripts, including exhibits, for all persons or entities identified in response to A(1) deposed in the action designated *Adelphia Recovery Trust v. Bank of America, N.A., et al.*, No. 05-cv-9050-LMM (S.D.N.Y.).

### B.   Definitions and Instructions

1.    The term "document(s)" includes any writing, charts or data compilation (**including electronically stored information**), and includes, without limitation: notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments. A draft or non-identical copy is a separate document within the meaning of this term.

2.    The term "to identify", when referring to a person or entity, means to give, to the extent known, the person's full name, business address and business title or affiliation.

3.    The terms "all", "each" and "any" mean "all/each/any".

4.    The connectives "and" and "or" mean "and/or".

5.    The use of the singular form of any word includes the plural and vice versa.

6.    If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances giving rise to the privilege, and shall also provide the following information in log form: a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

7.    Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.