**By ECF**                                                        August 9, 2016

Honorable Kimba M. Wood
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      **Re:  *Rigas v. United States*, No. 11-cv-6964 (KMW)**

Dear Judge Wood:

      We are submitting this joint letter to advise the Court of a discovery dispute between petitioners John Rigas and Timothy Rigas ("Petitioners") and non-parties (a) Covington & Burling LLP ("Covington"), (b) Boies, Schiller & Flexner LLP ("Boies Schiller"), (c) Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") and (d) Willkie Farr & Gallagher LLP ("Willkie Farr") (collectively, the "Law Firms") regarding the subpoenas *duces tecum* Petitioners have served on the law firms (the "Subpoenas").

      On March 16, 2016, pursuant to the authorization of this Court, Petitioners issued the subpoenas *duces tecum* attached hereto as Exhibit A to each of the Law Firms.

      Each of the Law Firms have asserted similar objections to the Subpoenas [Objection Letters attached hereto as Exhibit B].  After meeting and conferring, objections including the following could not be resolved:

      1.      The Law Firms object to producing documents other than direct written communications with the Government responsive to request 1 on grounds including that the burden and expense of searching for other types of documents would outweigh their potential relevance.

      2.      The Law Firms object to Petitioners seeking discovery from the Law Firms until discovery is completed from the Government and Adelphia Communications Corp. ("Adelphia").

      3.      The Law Firms object to producing privilege logs.  Instead, they propose to provide information sufficient to establish that the withheld documents from their files are privileged.

      The positions of Petitioners and the Law Firms are as follows:

119206919_1

Honorable Kimba M. Wood
August 9, 2016
Page 2

## PETITIONERS' POSITION

On June 20, 2014, this Court granted Petitioners' motion for discovery in connection with their petitions to vacate, set aside, or correct the sentences they received in *United States v. Rigas*, 02-CR-1236.  In doing so, this Court noted that discovery is not as of right in habeas actions but that it was warranted in this case because Petitioners had made specific allegations to demonstrate good cause for some discovery.  [Dkt. No. 39 at 1-2]

In addition to allowing discovery from the Government, the Court also approved discovery from Adelphia. But the Court did not simply provide generalized leave to pursue discovery—the Court went through the document requests carefully *making 29 deletions or additions* to the language Petitioners originally proposed.   [Dkt. No. 39, Exh. B] The Court made those edits and adjustments consistent with its decision to limit initial discovery to "those requests that are most central to Petitioners' claims, while reducing the burden on third-parties." [Dkt. No. 39 at 2]

The discovery the court approved in relation to Adelphia defined Adelphia as including its present or former attorneys—both in-house and outside counsel. [Dkt. No. 39, Exh. B] Despite this, Adelphia informed Petitioners it would not be producing documents from its law firms, regardless of whether such documents were deemed to be within the custody or control of Adelphia.

The position that Adelphia was taking on this issue was inconsistent with the document requests the court had approved, which required tender of responsive documents in the possession of all current and former counsel. It was also inconsistent with Federal Rule of Civil Procedure 34(a), which requires a responding party to produce documents "in the responding party's possession, custody, or control." It is widely recognized that this standard includes documents in the possession of the responding party's attorneys - as such material is in the "control" of the client.  *See generally* 8B C. Wright and A. Miller, et al.,  Federal Practice and Procedure § 2210 (April 2016 Update).

Rather than litigate over Adelphia's non-compliance with the subpoena—a position Petitioners maintained to be "baseless,"—Petitioners requested permission from this Court to issue the Court-revised document requests directly on the Law Firms.  On February 17, 2016, the Court signed the Subpoenas and they were served on March 16, 2016.

Despite the fact that the Court specifically approved the document requests—limiting them to the area's most central to Petitioners' claims while minimizing the burden on third-parties - the Law Firms are taking the position that it would be an undue burden for them to produce the documents in question (at least documents other than a small slice of the authorized discovery).  And they further contend that, even if they are forced to produce documents, such production should not happen until after Petitioners have completed all discovery with Adelphia and the Government. Finally, the Law Firms indicate that even if they do end up complying, they

Honorable Kimba M. Wood
August 9, 2016
Page 3

will refuse to produce a privilege log to indicate whether they are withholding particular documents based on an assertion of attorney-client privilege or work product protection.

The Law Firms have made an offer that *if* Petitioners agree to withdraw all of their other document requests, *then* the Law Firms would be willing to produce any written communications between Adelphia and the Government relating to the interference claims. The Law Firms' proposed agreement would (for reasons described below) require Petitioners to forgo securing essential parts of the  discovery this Court has already approved. Petitioners have unequivocally rejected this offer, and now ask that the Court order the Law Firms to comply with the document requests the Court has already edited and approved. As for the nature of any privilege log, it is premature to consider that issue without any sense of whether the number of responsive documents the Law Firms will withhold as privileged is small, large or in between. Even now, however, it is obvious that the specific approach the Law Firms are advocating cannot satisfy the core requirements of informing Petitioners about the documents being withheld in a manner that allows Petitioners to determine whether they agree with the claimed privilege or wish to challenge that determination.

**A.      The Information Sought is Highly Relevant.**

The Law Firms assert that they object to producing documents other than direct written communications with the Government responsive to request 1 on grounds including that the burden and expense of searching for other types of documents would outweigh their potential relevance. [*See* Exhibit B at ¶¶ 4 and 5]  Central to this objection is the Law Firm's view that, notwithstanding this Court's careful tailoring of the requests, the only documents truly relevant to Petitioners' claims are direct written communications between Adelphia and the Government. This claim misses the mark in two major respects.

First, there is no particular reason to believe that all or most interactions between Adelphia (including its lawyers) and the Government would have taken place through "direct written communications with the Government." Indeed, there is every reason to believe that when the Government exerts pressure of the sort alleged here, much of that communication is oral. That does not mean, of course, that such communications are never memorialized in writing. Participants in oral conversations often take written notes or write e-mails, memoranda and letters to others about the conversation. Any such documents are enormously relevant and qualify, in the words of the Document Request, as "documents *identifying or concerning each communication*, conversation and meeting between the Government and Adelphia relating the [specified] subject matter." (Request 1 (emphasis added). Yet, according the Law Firms, they should not be compelled to disclose any of those documents aside from direct communications between Adelphia and the Government. This position creates a completely artificial distinction between written communications and writings reflecting all communications, and must be rejected

Second, there is no merit to the Law Firms' general claim of irrelevance or marginal relevance vis-à-vis (a) communications within Adelphia, (b) non-privileged communications

Honorable Kimba M. Wood
August 9, 2016
Page 4

within Adelphia's law firms, (c) certain internal Adelphia documents such as board minutes, and (d) communications with third parties regarding Government communications. It should be plain that each of these requests is designed to secure documents that are highly probative of the facts at issue.    Take, for example, communications with third parties regarding Government communications. It is Petitioners' belief (backed already by considerable evidence) that the Government exerted great pressure on Adelphia to make sure third parties under Adelphia's influence did not cooperate with the defense or testify for the defense. It is entirely reasonable to believe, then, that there are (non-privileged) documents in the Law Firms' files indicating that, at the Government's behest, an Adelphia lawyer (or some other agent) communicated with a third-party to request that the third party refrain from cooperating with the Rigases in any way. It is difficult to imagine any document more probative of Petitioners' interference claims, yet, per the Law Firms' view of what is relevant and important, the Rigases would never see any such critical documents. That is not a defensible position.

The same can be said about the other categories of documents set forth in the Document Requests. Documents reflecting communications within or between the Law Firms, or between the Law Firms and Adelphia, are expected to be highly fertile sources of information—and not all of them are likely to be privileged (for reasons discussed below). Similarly, internal communications within Adelphia are at the core of relevance here. The Law Firms seek to dismiss that last category by suggesting that any of those documents necessarily will be disclosed through Adelphia's own compliance with the Document Requests directed at documents in its possession. But it flouts experience to suggest that all the same documents are retained (some 11-14 years later) by different individuals and entities.  One would naturally expect that document productions by Adelphia and the Law Firms will reveal that Adelphia possesses all kinds of responsive documents that the Law Firms do not possess and that the Law Firms possess all kinds of responsive documents Adelphia does not physically possess (although, as a matter of law, anything in the Law Firms' possession is, in fact, deemed to be in Adelphia's possession).

**B.      Compliance With the Document Requests Poses No Undue Burden on the Law Firms.**

Petitioners take no issue with the Law Firms' observation that discovery should be carried out in ways that avoid *undue* burden on those responding to subpoenas. Turning to that issue, once a party seeking discovery has demonstrated that the information sought is relevant and material to the claims at issue, the party seeking to modify or quash the subpoena bears the responsibility of establishing undue burden. *Alex & Ani, Inc. v. MOA International Corp.*, 2011 WL 6413612, at *3 (S.D.N.Y. 2011) (Wood, J.); *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).  The Law Firms cannot carry that burden here. They are being asked to search for responsive documents contained within the files of one particular client. And the fact that the case was a major one only serves to mitigate their claims of undue burden.

Even on its own terms, the "burden" assertion is difficult to assess given the absence of any information about (a) how much of the material is digitized and thus amenable to rather

Honorable Kimba M. Wood
August 9, 2016
Page 5

simple search tools and (b) how the boxes of hard copy are indexed. The Law Firms list numbers of boxes in each firm's possession, but they are not claiming that those are all (or mostly) boxes of documents from before April 25, 2005 - the date after which Petitioners have indicated they are not seeking production. For example, the Law Firms note that Willkie Farr served as restructuring counsel to Adelphia from mid-2002 to at least late 2010. Less than a third of that time is within the relevant pre-April 25, 2005, so the existence of 3800 boxes does not speak to the burden. And with regard to each of the Law Firms, even with boxes of documents from the relevant time periods, they are most certainly indexed in ways that will require actual searches of a relatively small number. This is true regarding the time frame of documents, as well as their subject matters. Boxes of pleadings, financial statements, legal research and myriad other topics plainly will contain no responsive materials. The actual number of boxes that need to be searched, then, is likely to be a small fraction of the overall number of Adelphia boxes the Law Firms have listed.

In addition, it should be noted that Adelphia agreed to give Petitioners access to the warehouse containing its documents, conditioned on that not being deemed a waiver of any privilege that might apply.  It was one of the Law Firms that negotiated that agreement on Adelphia's behalf. The Law Firms can avoid any burden whatsoever by entering into a similar agreement. But even without that, there is nothing undue about the burdens being places on the Law Firms here.

The Law Firms further argue that the number of sections and subparts in the Document Requests reveals this is "broad discovery," which is disfavored. This claim is quite ironic in that Petitioners could easily have collapsed all of the specific requests into one or two broad and general document requests. The effect of more specific delineation is to *narrow* the scope of what must be produced. Yet that narrowing is now being used as evidence of breadth.

As indicated above, the Law Firms have taken it upon themselves to rank order the potential relevance of the various categories of Document Requests, and to then suggest that discovery should only go forward on one of those categories - which is also the category they assert will be the least burdensome for the Law Firms. But that calculus woefully discounts the importance of these other categories, and dramatically exaggerates the burdens the Law Firms will endure by simple compliance with the Document Requests as formulated by the Court.

**C.     There is No Cause for Delaying the Time for Compliance.**

The Law Firms also contend that the approved discovery creates an unnecessary burden because the Government and Adelphia currently are in the process of producing responsive documents to the subpoenas issued upon them.  Apparently, the Law Firms assert that discovery must proceed *seriatim*, with some sort of inventory created following the completion of discovery by Adelphia and the Government, followed by the Law Firms' tailoring their production to include only those responsive documents that were not already produced by Adelphia or the Government. It is difficult to comprehend how this approach would do anything but add to the burdens of discovery for all parties for it would add another layer of cost by

Honorable Kimba M. Wood
August 9, 2016
Page 6

requiring the Law Firms to not only conduct their own document searches, but to then compare the responsive documents in their possession against Adelphia's and the Government's productions. And it would add yet another layer of delay to a process that, two years after the Court's authorization for discovery, is still mired in repeated discovery disputes and struggles to receive the materials the Court authorized.

It is no answer to say, as the Law Firms do, that once discovery from the Government and Adelphia is complete, Petitioners' should demonstrate what documents, if any, they still need from the Law Firms following their review of documents from Adelphia and the Government and then tailor their requests accordingly. [*Infra* at p. 18]  This image of the discovery in this case is off base. The Law Firms depict the process as if Petitioners' were seeking to find all 52 cards in a deck, so that once they secure 51 of the cards from other sources, they can simply "tailor" their remaining request to the one missing card—the seven of clubs. The fallacy, of course, is that Petitioners will never know what they have not found. The Law Firms never explain how Petitioners can possibly restrict their requests—more than they already have—based on whatever discovery they obtain from other sources. Only the Law Firms know what responsive documents they possess, and only the Law Firm will be in a position to withhold any documents Petitioners have already received (although it is hard to imagine what purpose that could possibly serve).

Ultimately, it appears that the Law Firms are suggesting a different kind of game: heads we win, tails you lose. If Petitioners secure significant information through discovery from Adelphia or the Government, the Law Firms contend there is no need for anything but specifically tailored discovery from the Law Firms. And if Petitioners do not secure significant information through discovery from Adelphia or the Government, the Law Firms contend that no discovery from the Law Firms should go forward because the claims would be "unsubstantiated." [*Infra* at p. 16]  This reasoning is flawed. Petitioners cannot and do not know where critical documents might be situated at this time. That they may recover important documents from the Government or Adelphia will say nothing about whether documents yet more important are in the Law Firms' possession.  And if they recover no important documents from the Government or Adelphia, that will say nothing about whether there are important documents in the Law Firms' possession that will be the ones to powerfully substantiate Petitioners' claims.

This is not, by any means, a situation in which the responsive documents in each respondent's possession are inherently duplicative. For example, the requests seek documents relating to the Government's role (as transmitted through various lawyers and others) in decisions made by the Special Committee.  [*See* Exhibit A at Sec. A, 1(f)]  We anticipate that many of those communications were oral, and it is almost certainly the case that, in connection with some of those communications, one or more participants  documented them by taking notes–or creating other writings—when other participants did not.  And it is plainly true that, even if all participants took notes or reduced something to writing, each different set of notes or writings regarding such communications or events documents important information not

Honorable Kimba M. Wood
August 9, 2016
Page 7

reflected in others' notes. (We have seen exactly that with regard to the different sets of notes that were taken by participants in the pre-trial interview of Carl Rothenberger. Each set of notes contains details on numerous points that are missing from the other sets.) In sum, nothing that may happen with regard to the Adelphia and Government productions will have any impact on Petitioners' need for discovery from the Law Firms or on the Law Firms' duty to conduct its search and tender all responsive non-privileged documents.

Indeed, it bears noting that search of documents held by the Law Firms was Adelphia's responsibility in the first place pursuant to the subpoena with which it was served. The point of Petitioners serving the Law Firms directly was simply to cut through the process of having to file a Motion to Compel against Adelphia. But that procedural move does not erase the fact that this is all Adelphia's obligation, which makes it particularly misguided to argue that the Law Firms should be allowed to delay any discovery until other Adelphia discovery is completed.

**D.    It is Premature to Resolve Exactly What Type of Privilege Log Will Be Appropriate Here, But it is Certain That Disclosure Far More Elaborate Than Proposed by the Law Firms Will Be Necessary.**

The Law Firms also contend that, even if they are required to produce documents responsive to the subpoenas, they should not be required to produce a privilege log of documents they have withheld from discovery. They seek instead to provide: (a) a representation that the documents in question are privileged communications; (b) identification of the time period encompassed by the withheld documents and (c) a listing of the individuals who were authors or recipients of the documents. [Infra at p. 14].   The Law Firms contend that this approach was endorsed in *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1996 WL 125661 (S.D.N.Y. March 20, 1996). The Law Firms are wrong.

At the outset, it is odd that the Law Firms repeatedly ask the Court to restrict the Document Requests to non-privileged material. [*Infra* at pp. 11, 14 and 15]. By definition, Petitioners are not entitled to any documents that are privileged or protected from disclosure by the work product doctrine. But Petitioners and the Court do not have to simply take the Law Firms' word for a claim that documents so qualify. Rather, it is "well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2002). And it is equally well-established that the beginning of that process is for the person withholding a document to create a privilege log that identifies "(i) the type of document, *e.g.*, letter of memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressee of the document, and other recipients and, where not apparent, the relationship of the author, addresses, and recipient to each other."  United States District Court for the Southern District of New York Local Civil Rule 26.2(a)(2)(A).

This tried and true approach allows the party seeking discovery to make a meaningful assessment of whether to challenge the assertion of privilege. Thus, one invoking the privilege

Honorable Kimba M. Wood
August 9, 2016
Page 8

must submit "an adequately detailed privilege log" or other evidence "providing sufficient detail" to determine whether each document qualifies. *See Construction Products Research Inc.*, 73 F.3d 464, 473 (2d Cir. 1996), *cert, denied*, 519 US 927 (1996) (*quoting Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474 (S.D.N.Y. 1993).

The Law Firms correctly observe that there are some instances in which courts have allowed for a modified log—one that provides details about particular categories of withheld documents, as opposed to separately describing each document in particular. The court in *Thrasher* described the circumstances in which courts might exercise their discretion to allow that modified approach.  First, in a circumstance that the Law Firms do not contend applies here, "if detailed disclosure would, in effect, reveal the very information that may be privileged, the party may tailor his response to mask such sensitive information." *Thrasher*, 1996 WL 125661, at 1. Second, deviations from the classic privilege log system can be appropriate if "(a) a document–by–document listing would be unduly burdensome *and* (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." *Id.* (emphasis added).

It is very premature to determine whether the circumstances here will justify the kinds of modifications discussed in *Thrasher*. The document request there called for "all documents reflecting contacts between [an individual defendant's] attorneys and those of the other defendants in connection with this case." *Id*. And it was the position of the responding party that each and every such document was privileged. It was straightforward, then, for the responding party to estimate the numbers of documents that would have to be listed in a log and to show the burden of doing that. Here, by contrast, there is no way of knowing how many responsive documents—privileged or otherwise—are in the Law Firms' possession. And the answer to that question could make all the difference. If it turns out there are only 100 responsive documents and that the Law Firms are asserting privilege on 30 of them, there will plainly be no basis for a claim that a traditional document-by-document privilege log poses an undue burden. By contrast, if there turn out to be 10,000 responsive documents and the Law Firms assert that 3,000 of them are privileged, a category-based log might well be appropriate.

Petitioners say "might" because *Thrasher* also provides that a category-based log is only a possible option when "additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." *Id.* Here, determinations of whether the attorney-client privilege or work-product doctrine apply, are likely to turn on specific issues such as: (a) whether they reflect confidential attorney-client communications generally protected by the privilege; (b) whether that privilege has been waived because the substance of the communications was shared with the Government or some other third party; (c) whether the common law work product doctrine applies to these non-parties, which includes an inquiry into whether the specific documents were prepared in anticipation of litigation; (d) whether, if work product protection is extended, the document contains ordinary work product or opinion work product; (e) whether documents can be redacted so at to avoid disclosure of legal theories and opinions; and (f) whether Petitioners can establish

119206919_1

Honorable Kimba M. Wood
August 9, 2016
Page 9

sufficient need to overcome any work product protection. These are not issues that can likely be resolved on a wholesale basis without a document-specific log. If the Law Firms conclude otherwise once they know the nature of the implicated documents, they can at that time seek agreement to a different type of log, or seek a court order allowing a modified log. But all of that is premature at this point and there is no reason that the nature of the eventual log should hold up production on the documents the Law Firms agree are non-privileged.

All that said, one thing is beyond dispute: The way in which the Law Firms currently propose to indicate what documents they will withhold is thoroughly inadequate. It is one thing to allow one withholding documents based on a claimed privilege to lump together a set of documents that fit the same description and raise the identical privilege issues. It is quite another thing to allow one withholding documents based on a claimed privilege to generally assert that "the withheld documents are either protected by the attorney-client privilege or work product doctrine." That kind of disclosure provides absolutely no basis of assessing the propriety of the claim and would allow responding parties to be the sole decision makers on whether documents may be withheld—without Petitioners having any sense of what has been withheld much less having the opportunity for judicial determination of whether the documents are, in fact, protected from discovery. Neither the attorney-client-privilege nor the work product doctrine can possibly operate under such a procedure.

## THE LAW FIRMS' POSITION

Petitioners are seeking an extraordinary amount of discovery from four separate law firms based on two narrow claims – "that the Government hindered [Petitioners] from speaking to potential witnesses before trial, in violation of the Fifth and Sixth Amendments (the 'Witness Access Claim'), and compelled their former employer [Adelphia] to refuse to advance their legal fees, in violation of the Sixth Amendment (the 'Fee Advancement Claim')." Dkt. 80 at 1. Petitioners' numerous, overbroad requests greatly exceed the scope of discovery permitted by Federal Rules of Civil Procedure 26 and 45.

Petitioners' requests would be excessive if sought from any non-party. They are especially objectionable here because Petitioners are seeking this discovery from four different law firms that represented, over a period of many years beginning over fourteen years ago, Adelphia and the Special Committee of the Adelphia Board of Directors (the "Special Committee") and collected or generated literally millions of pages of electronic and hardcopy documents in the process. To the extent responsive documents exist at all, they will be particularly difficult to search for and identify in this case. Furthermore, many of the requests plainly seek material that is covered by attorney-client privilege or attorney work product immunity. As the Second Circuit has cautioned, "[c]ourts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (citing *Hickman v. Taylor*, 329 U.S. 495, 506-14 (1947)). Petitioners' Subpoenas blithely ignore any such constraint.

Honorable Kimba M. Wood
August 9, 2016
Page 10

The Subpoenas should be quashed or stayed pending the completion of Petitioners' discovery from the Government, the respondent in this proceeding, and from Adelphia, a non-party far more central to Petitioners' claims because it is the entity that purportedly took the actions about which Petitioners complain.  If the Court ultimately permits any discovery from the Law Firms, the Court should modify the Subpoenas to exclude requests to the extent they seek privileged documents and to limit the Subpoenas to the requests relating directly to the narrow issues of Petitioners' Witness Access and Fee Advancement assertions.

**A.      The Law Firms' Objections to the Subpoenas Are Timely and Have Never Been Adjudicated**

Petitioners provide a materially incomplete procedural summary to claim that the Court already has settled the scope of discovery from the Law Firms.  This is not accurate.

Petitioners rest their claim on the Court's May 15, 2015 Opinion and Order, in which the Court authorized discovery from the Government and Adelphia.  Before issuing that decision, the Court invited the Government to provide objections to Petitioners' proposed document requests (Dkt. 80 at 27), but did not hear from non-parties Adelphia and the Law Firms.  This makes sense, since neither Adelphia nor the Law Firms had been served with any subpoenas and had not appeared in this proceeding.

Petitioners served their subpoena on Adelphia on May 22, 2015 and Adelphia served timely objections on July 1, 2015.  As relevant here, Adelphia objected to the subpoena to the extent it sought to impose an obligation on Adelphia to locate, obtain and produce documents in the possession of Adelphia's outside counsel.  Petitioners never formally responded to Adelphia's objections or moved to compel.  Instead, Adelphia proposed (Dkt. 88 at 1), and Petitioners eventually agreed to, an arrangement pursuant to which Adelphia has provided Petitioners with access to all of the files in Adelphia's possession that might be responsive to that subpoena.  Petitioners' review of those files is ongoing.

Petitioners now claim that Adelphia's objection to locating, reviewing and producing documents in the Law Firms' possession is inconsistent with the Court's orders regarding the subpoena to Adelphia.  This is wrong.  On October 2, 2015, Petitioners and Adelphia agreed to defer discussion regarding documents held by the Law Firms while they addressed the documents in Adelphia's possession.  *See* Dkt. 89 at 2; Dkt. 91 at 2 n.1.

Several months later, Petitioners sought leave to serve subpoenas identical to the one served on Adelphia directly on the Law Firms (Dkt. 101) and the Court signed the Subpoenas on February 17, 2016.  Petitioners served the Subpoenas on the Law Firms on March 16, 2016, and the Law Firms served timely objections, which included a compromise proposal, on April 8, 2016.  The Law Firms offered to produce direct written communications with the Government

Honorable Kimba M. Wood
August 9, 2016
Page 11

relating to the topics covered by Subpoena request 1 – the only request directly tailored to the claims at issue in this proceeding – in satisfaction of each Law Firm's obligations under its Subpoena.[*]  [*See* Exhibit B Boies Schiller Ltr. at 3; Covington Ltr. at 4; Fried Frank Ltr. at 3; Willkie Farr Ltr. at 4.]  Petitioners did not accept the Law Firms' offer.  Nor did Petitioners make any other meaningful offer to narrow the Subpoenas, except for their tentative agreement not to require production of documents created after April 25, 2005, the date of the Adelphia-Government settlement agreement and a date following the alleged conduct underlying Petitioners' claims in this proceeding.

> **B.      The Subpoenas Should be Quashed or Modified Because They Seek Enormous Volumes of Plainly Privileged Material**

The Subpoenas should be quashed or modified because an overwhelming volume of the material Petitioners are seeking is plainly privileged and the burden of searching for, reviewing and producing the non-privileged documents outweighs any potential relevance of the documents.

The Subpoenas seek six categories of documents:  (1) communications with the Government; (2) communications with Adelphia; (3) internal law firm communications and notes; (4) communications between the Law Firms and their agents; (5) certain internal Adelphia documents, such as board minutes; and (6) communications with third parties regarding Government communications.  The documents in categories 2, 3 and 4 are plainly privileged.  Petitioners claim that "documents reflecting communications within or between the Law Firms, or between the Law Firms and Adelphia, are expected to be highly fertile sources of information – and not are all of them are likely to be privileged" without explaining why these plainly privileged documents are not protected from disclosure.  [*Supra* at 4.]  The Law Firms should not bear the burden of collecting, reviewing and logging documents for which there can be no reasonable dispute regarding their privileged status.

As noted above, the Law Firms offered to produce the documents in category 1 as part of a negotiated resolution of the Subpoenas, even though Petitioners have the ability to obtain these documents directly from the Government.  Petitioners rejected this proposal.  Petitioners already have access to category 5 documents through Adelphia's compliance with its subpoena.  And as explained below, the extraordinary burden imposed by searching for the inherently collateral documents in category 6 significantly outweighs any potential relevance.

---

[*] These documents would supplement productions Petitioners received more than five years ago. Boies Schiller, Covington, and Fried Frank previously produced direct written communications with the Government for a portion of this period (May 1, 2002 through July 31, 2014), in response to Petitioners' subpoenas served in *United States v. Rigas*, No. 4:05-cr-0402 (M.D. Pa.).

Honorable Kimba M. Wood
August 9, 2016
Page 12

It should be obvious that the burdens that would be imposed on counsel to review millions of pages of documents maintained by four law firms over a period of years – and either withhold or redact the privileged materials at issue here – would be of a dramatically greater magnitude than what Buchanan Ingersoll & Rooney, P.C. and the Court faced when the Court previously addressed discovery from a law firm.  In connection with that subpoena, the Court had to conduct an *in camera* review of three documents relating to a single witness interview.  *See* Dkt. 87 at 1.  Therefore, even if the Subpoenas are not quashed entirely, they should at least be modified to exclude all of the requests to the extent they seek privileged materials.

The requests for privileged communications and documents also would impose an undue and unnecessary burden on the Law Firms to log indisputably privileged material.  Petitioners apparently believe (but do not make explicit) that the Law Firms should each prepare document-by-document privilege logs for the privileged documents they each possess.  In the context of subpoenas to Law Firms that would require them to search a staggering volume of material arising out of their years-long representations of a client, this position is absurd.  It also contravenes Local Rule 26.2(c), which instructs parties to agree to "[e]fficient means of providing information regarding claims of privilege" and states that "it is presumptively proper to provide the information required … by group or category."   *See also* Committee Note, L. Civ. R. 26 (when dealing with privilege logs, "'[t]he guiding principles should be cooperation and the 'just, speedy, and inexpensive determination of every action and proceeding.'"). Petitioners cite Local Rule 26.2(a), which lists the basic forms of information needed to assess the privileged nature of withheld documents in a typical case (which this is not), but ignore Local Rule 26.2(c)'s instruction that it is "presumptively proper" to provide this information "by group or category."

The Law Firms, on the other hand, proposed a practical and reasonable solution: a representation that the documents in question are privileged communications; an identification of the time period encompassed by the withheld documents; and a listing of the individuals who were authors or recipients of the documents.  *See SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1996 WL 125661, at \*2 (S.D.N.Y. Mar. 20, 1996).  Petitioners' rejection of this proposal is baseless.  It is well-established that attorneys and law firms should not have to prepare detailed privilege logs when, as here, there is a "strong likelihood that [the requested] documents are in fact subject to legitimate claims of privilege."  *Am. Broad. Cos. v. Aereo, Inc.*, No. 12 Civ. 1540 (AJN), 2013 WL 139560, at \*2 (S.D.N.Y. Jan. 11, 2013) (holding that "a request for privilege logs of all documents held by all outside counsel regarding the analyses of the harm caused to Plaintiffs by [Defendant] and similar technologies is unduly burdensome"); *see also Games2U, Inc. v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at \*7 (D. Ariz. Aug. 9, 2013) (holding that a patent attorney's declarations substantiating the privileged nature of her files were sufficient because, "a more detailed privilege log is not necessary to determine which documents are protected."); *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) (following *Thrasher*, and observing that it would be unduly burdensome to require law firms to create document-by-document privilege logs for documents generated over three years of litigation "when it would be foolish to believe that very many of those documents

would be other than protected by the attorney-client privilege or work product"); *Mfrs. Collection Co. v. Precision Airmotive, LLC*, No. 3:12-cv-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (following *Thrasher* and *Imperial* and holding that a document-by-document log was not necessary to establish that the withheld documents were privileged).

Petitioners claim, without any citation to authority, that it is "premature" for the Court to decide how the Law Firms should document the privileged nature of documents sought by the Subpoena. Here, with subpoenas issued to law firms (unlike in the cases cited by Petitioners), seeking categories of documents that are presumptively privileged or protected from disclosure (including communications between each Law Firm and Adelphia, communications between the Law Firms, and internal Law Firm communications), the Court should address this issue before the Law Firms have to begin any review of potentially responsive documents so that they can plan how to review (and if necessary, log) responsive documents. *See, e.g., Thrasher*, 1996 WL 125661, at *1-2 (approving respondents' proposal to submit a categorical log *prior* to the commencement of any discovery); *Imperial Corp.*, 174 F.R.D. at 476-79 (same). And the Court should, consistent with Local Rule 26.2(c), allow the Law Firms to memorialize the privileged nature of the requested documents in a streamlined fashion that minimizes the burden imposed by the Subpoenas.

### C.   The Burden of Compliance with the Subpoenas Far Outweighs the Relevance and Necessity of the Materials Sought

It is not enough for Petitioners to claim that the Subpoenas seek relevant materials. Instead, the scope of any discovery from the Law Firms must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) likewise provides that a "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive …." In other words, the relevance and potential significance of discovery must be weighed against the burden and expense imposed by seeking it.

Moreover, because Petitioners are seeking discovery from non-parties, Rule 45 requires Petitioners to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 also directs a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). As the court stated in *Cohen v. City of New York,*

> In assessing these considerations, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indemnity Co. v. Metropolitan Life Insurance Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005); *see also Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ.

Honorable Kimba M. Wood
August 9, 2016
Page 14

>4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004) ("[T]he Court should be
>particularly sensitive to weighing the probative value of the information sought
>against the burden of production on [a] nonparty.").

No. 05 Civ. 6780 (RJS)(JCF), 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010).

Here, Petitioners have served on each of the four Law Firms a subpoena with 16 requests. One of the requests has 15 subparts, and one of those 15 subparts has seven sub-subparts.  [*See* Exhibit A].  This is exactly the sort of "broad discovery" from counsel the Second Circuit has stated is "disfavored." *Friedman*, 350 F.3d at 70.  Petitioners try to sidestep this by claiming that they "could easily have collapsed all of the specific requests into one or two broad and general document requests."  But this would have not made the Subpoenas any less objectionable.  They still would have sought "disfavored" "broad discovery" from attorneys.

The documents most directly relevant to Petitioners' two narrow claims – and the ones the Law Firms already offered to produce – are direct communications with the Government, because Petitioners' entire claim in this proceeding depends on their ability to establish that the Government exerted improper pressure on Adelphia in two specific ways.  And the burden posed by searching for direct, non-privileged written communications with the Government is far less extreme than the burden posed by the subpoenas' many other (and broader) requests.

In contrast, many other requests seek documents whose potential relevance is far outweighed by the burden of searching for them.  For example, request 2, which seeks communications with third parties about communications with the Government responsive to request 1, would require searching the Law Firms' correspondence with innumerable third parties to determine if there were any such second-hand communications.  Such a request is unduly burdensome as a general matter, and is particularly burdensome absent an initial showing that there actually were any communications responsive to request 1.  Many of the other requests seek documents unconnected to Petitioners' claims or even to Petitioners.  For example, Petitioners are seeking documents related to "whether the Government could or would consider … Adelphia's willingness to waive the attorney-client and work product privileges" (request 1(o)(vi)) as well as  "[m]inutes of all meetings of the Special Committee" (request 12) and "[a]ny notes taken by attendees at meetings of the Special Committee" (request 13), regardless of the date of the meeting or the topics addressed at it.

Petitioners misstate the Law Firms' position when they describe a purported "general claim of irrelevance or marginal relevance" for "communications within Adelphia," "non-privileged communications within Adelphia's law firms," and "certain internal Adelphia documents such as board minutes."  [*Supra* at 4.]  The Law Firms' principal objection to searching for, reviewing and producing internal Adelphia communications and corporate documents is that Petitioners already have access to these materials through their subpoena to Adelphia.  Therefore, the requests for these materials are duplicative and unduly burdensome, in violation of Rules 26 and 45.  And it is hard to imagine what kinds of "non-privileged communications within Adelphia's law firms" would be responsive to the Subpoenas.

Honorable Kimba M. Wood
August 9, 2016
Page 15

Petitioners also argue that the Law Firms "are being asked to search for responsive documents contained within the files of one particular client." [*Supra* at p. 4]. But they ignore that the Law Firms' representations of this client were exceptionally complex – spanning several years, occurring in multiple fora, and arising out of one of the largest corporate collapses in modern history. For example, Covington alone has more than **700** boxes of hard-copy records related to its representation of Adelphia and the Special Committee. The vast majority of these boxes contain paper documents from prior to April 25, 2005 which have not been scanned. It may be possible to exclude some boxes based on index descriptions, but many are individual attorneys' working files and correspondence files which would have to be reviewed to respond to the subpoena. Boies Schiller has more than **1,000** boxes of hard-copy materials related to its representation of Adelphia, almost all of which contain paper documents from prior to April 25, 2005, as Boies Schiller's representation of Adelphia ended in August of that year. Furthermore, many of these boxes would have to be reviewed to respond to the subpoena and could not be excluded based solely on the index names. Similarly, Fried Frank has more than 2,500 boxes of hard-copy records, all of which relate to its representation of Adelphia well before April 25, 2005, and none of which are amenable to search tools – simple or otherwise. Willkie Farr served as restructuring counsel to Adelphia beginning in approximately June 2002 and, in that capacity, represented Adelphia on a regular basis until at least late 2010. Since then, Willkie Farr has continued to represent Adelphia periodically on matters arising out of its restructuring. In all, Willkie Farr has over **3,800** boxes of hard-copy records related to its representation of Adelphia as well as a significant volume of electronically stored information. Contrary to what Petitioners assert, these 3,800 boxes are not "indexed in ways that will require actual searches of a relatively small number" [*supra* at 5] in order to isolate boxes containing one or more potentially responsive documents from the pre-April 25, 2005 period. On the contrary, the indices for many of these boxes contain no temporal limitation whatsoever or their descriptions otherwise do not provide a basis for excluding the boxes from a search for potentially responsive documents. If the Court permits Petitioners to take any discovery from the non-party Law Firms, the Law Firms should not have to undertake the burden and expense of searching through all of their voluminous records unless Petitioners first establish that there is direct evidence to support their contention that there were in fact communications with the Government related to their two specific claims.

Petitioners try to avoid the burden objection by pointing to their "warehouse agreement" with Adelphia, which permits Petitioners to review Adelphia's files without this review constituting a waiver of any applicable privilege. [*Supra* at 4.] It is one thing for a company in the final stages of the wind-down process to propose providing access to its records, especially when a relatively small number of potentially relevant documents covered by that proposal may be privileged. It is another thing entirely for Petitioners to suggest that the Law Firms' burden concerns can be avoided by letting Petitioners review all of the Law Firms' Adelphia files, including the overwhelming percentage of these files that are privileged documents.

But the Court should not allow Petitioners to take discovery from the Law Firms at this stage of the proceeding. Rule 26(b)(2)(C) directs the Court to consider "if the discovery sought

Honorable Kimba M. Wood
August 9, 2016
Page 16

is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The two most logical sources of evidence of alleged improper Government influence on Adelphia are the Government and Adelphia. The Government is still producing documents to Petitioners and Petitioners are continuing to review Adelphia's documents. Contrary to Petitioners' argument, it is common to stage discovery, with discovery from parties substantially completed before the parties are permitted to take discovery from third parties. For all the reasons set forth above, it is entirely reasonable for discovery from the Government and from Adelphia to be completed before the Court permits Petitioners to seek discovery from four law firms. If Petitioners cannot substantiate their claims based on evidence from those more central sources, the Court should revisit its order authorizing the issuance of the Subpoenas to the Law Firms.

Petitioners contend that proceeding with discovery first from Adelphia and the Government would be even more burdensome and costly for the Law Firms because the Law Firms would not only have to conduct their own searches but then "compare the responsive documents in their possession against Adelphia's and the Government's production." Petitioners are mistaken. As the party seeking discovery from the non-party Law Firms, it would be Petitioners' burden to demonstrate what documents, if any, they still need from the Law Firms following their review of documents from Adelphia and the Government, and then tailor their requests accordingly.

Petitioners draw an analogy to a search for the 52 playing cards in a deck, suggesting that if they find the first 51 cards, it will be impossible to tailor a request to find the missing card. [*Supra* at 6.] Without knowing the discovery obtained from the Government and Adelphia, it is impossible to determine whether it will be easy or hard for Petitioners to prepare such a tailored request or set of requests. But to be clear, the Law Firms' position is that unless Petitioners obtain a reasonable number of cards from the Government and Adelphia, the Court should revisit the question of discovery from the Law Firms, which is entirely at the Court's discretion. *See* Rules Governing Section 2255 Proceedings for United States District Courts, Rule 6.

For all of these reasons, the Subpoenas should be quashed or stayed pending completion of Petitioners' discovery from the Government and Adelphia. If the Court does permit Petitioners to take discovery from the Law Firms, it should be limited to direct written communications with the Government responsive to request 1. And if the Court does direct the Law Firms to respond to the Subpoenas, the Court should order that Petitioners pay the Law Firms for the time expended, and expense incurred, to ensure compliance.

*          *          *

Honorable Kimba M. Wood
August 9, 2016
Page 17


We thank the Court for its consideration.



Respectfully,


/s/ Christie Callahan Comerford
Christie Callahan Comerford

*Co-Counsel to Petitioners*
*John and Timothy Rigas*


/s/ Lawrence C. Marshall
Lawrence C. Marshall

*Co-Counsel to Petitioners*
*John and Timothy Rigas*



/s/ Dan C. Kozusko
Dan C. Kozusko

*Counsel to Non-Party*
*Willkie Farr & Gallagher LLP*


/s/ Ilana R. Miller
Ilana R. Miller

*Counsel to Non-Party*
*Boies, Schiller & Flexner LLP*


/s/ Sarah F. Warren
Sarah F. Warren

*Counsel to Non-Party*
*Fried, Frank, Harris,*
*Shriver & Jacobson LLP*


/s/ Jason P. Criss
Jason P. Criss

*Counsel to Non-Party*
*Covington & Burling LLP*


cc (by ECF and email):

    Damian Williams, Esq.
    Brian R. Blais, Esq.
    Justina L. Geraci, Esq.