# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| John J. Rigas and Timothy J. Rigas | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 11-cv-6964 (KMW) |
| United States of America | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A.

| Place: Dilworth Paxson LLP, 99 Park Avenue, Suite 320, New York, NY 10016 | Date and Time: March 30, 2016 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  2 - 17 - 16

~~CLERK OF COURT~~

*Signature of Clerk or Deputy Clerk*         USDJ

OR

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* John J. Rigas and Timothy J. Rigas                                             , who issues or requests this subpoena, are:

Christie Callahan Comerford, Esq., Dilworth Paxson LLP, 1500 Market St., Suite 3500E, Philadelphia, PA 19102. 215-575-7187; ccomerford@dilworthlaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## EXHIBIT "A"

Document requests directed to Adelphia Communications Corporation, as revised by Judge Wood's May 15, 2015 Order.

## A.   **Document Requests**

1.   All documents identifying or concerning each communication, conversation and meeting between the Government and Adelphia relating to the following subject matter:

a.   Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to Petitioners, including but not limited to how the Government would view such advancement, indemnification or payment of legal costs and the timing and basis of such decision.

b.   Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to any other current or former Adelphia officer, director or employee or prospective Adelphia director in relation to any ongoing law enforcement investigation, including the timing and basis of such decision.

c.   Adelphia's practices with respect to advancement, indemnification or payment of legal costs incurred by its present or former officers, directors or employees in defense of civil, criminal or administrative matters in the past.

d.   What actions Adelphia would, should or did take to assist the government in its investigation or prosecution of Petitioners, and what requests were made of Adelphia by the Government, including but not limited to what actions the government would consider to reflect Adelphia's "cooperation."

e.   What actions Adelphia would or could take to help it to avoid criminal indictment.

f.   What role, participation or oversight the government would have with respect to the investigation conducted by Adelphia's Special Committee.

g.   Whether Adelphia should prevent or place restrictions upon its employees talking to Petitioners or their representatives, including but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.

h.   The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether Petitioners should resign and/or be terminated as officers or directors of Adelphia.

i.    Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

j.    Whether any law firm retained by Adelphia, Petitioners and/or other Adelphia officers and directors should represent, or continue to represent, Petitioners.

k.    Whether the government and/or Adelphia would or should oppose, or seek to enjoin, efforts by Petitioners to gain access to other funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance.

l.    Whether the Government had any input into what form Adelphia turned over documents or other information to Petitioners and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.

m.    The Holder Memorandum.

n.    The Thompson Memorandum.

o.    Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

(i)    Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

(ii)    Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

(iii)    Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

(iv)    Adelphia's willingness to make witnesses available.

(v)    Adelphia's willingness to disclose the complete results of its internal investigation.

(vi)    Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

(vii)   Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.    All internal Adelphia documents identifying or concerning communications, conversations, and meetings between the Government and Adelphia relating to the subject matters identified in requests 1(a)-(o), as modified.

3.    All documents relating to conversations between Adelphia and any third party identifying or concerning communications, conversations, and meetings between the Government and Adelphia concerning the subject matters identified in requests 1(a)-(o), as modified.

4.    All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.    All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.    All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to Petitioners.

7.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to refuse indemnification or advancement of defense costs to Petitioners.

8.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to Petioners by the Rigas Family Entities.

9.    To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

10.    Minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

11.    Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

12.     Minutes of all meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

13.     Any notes taken by attendees at meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

14.     All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

15.     All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

16.     All documents relating to a joint defense between members of the Rigas Family and Adelphia.

**B.**     **Definitions and Instructions**

1.     The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.     The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas Family members and entities.  The term Special Committee includes its outside counsel, Covington & Burling.

3.     The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4.     The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5.     The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6.     The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled "*Federal Prosecution of Business Organizations.*"

7.     The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations.*"

8.     A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9.     A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10.     The term "document[s]" includes any writing, charts or data compilation **(including electronically stored information)**, and includes, without limitation:  notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments.  A draft or non-identical copy is a separate document within the meaning of this term.

11.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12.     The term "to identify" means as follows:

    a.    when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

    b.    when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document; d) the author(s), addressee(s), and recipient(s);

    c.    when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state the mode of communication; and c) to identify each person who was present or participated therein.

13.     The terms "all", "each" and "any" mean "all/each/any".

14.     The connectives "and" and "or" mean "and/or".

15.     The use of the singular form of any word includes the plural and vice versa.

16.     If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances

giving rise to the privilege, and shall also provide the following information in log form:  a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.     Where a requested communication was oral, the subpoenaed entity shall provide the following information:  (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.     Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"



Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915
Phone   814.274.9360
Fax     814.274.7782

---
                                                        Memorandum

Date        October 14, 2002

To          All Employees

From        Randall D. Fisher, Vice President and General Counsel

Regarding   Contact with members of the Rigas Family, employees of
            Rigas Family private companies or former employees
            indicted by the Federal Government

Cc          Erkie Kailbourne, Ron Stengel, Dan Liberatore, Bob Legge,
            Chris Dunstan


As a reminder, the Company is still under investigation by the United States
Attorneys office in both New York and Pennsylvania as part of ongoing
investigations, which have resulted in indictments of three members of the Rigas
Family as well as two former executives of Adelphia. Employees should be aware
that the Securities and Exchange Commission has sued Adelphia, the Rigas Family
and the former Adelphia executives for alleged violations of securities laws. The
Company is committed to cooperating with these federal agencies, because it is the
right thing to do and because cooperation with the government will help
recover damages done by the Rigases and will help the Company avoid prosecution.
Adelphia continues to cooperate with these government agencies by reviewing with
the government both its transactions and its communications with members of the
Rigas Family, Rigas Family private entities employees, former Adelphia executives
under indictment or any of their actual or purported counsel or representatives.
Additionally, beginning later this week, the Company will be cooperating with agents
of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia
continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

Rigas Family Contact Memo 10-12-02

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

procedures regarding contact with either any member of the Rigas Family, any employee of any of the Rigas Family private companies, any former executive of Adelphia currently under indictment or any of their actual or purported counsel or representatives..

**Direct Contact**
It has come to the attention of the Company that members of the Rigas family have been attempting to contact certain Company employees on various issues.  In the case of any contact regarding a business matter between the Rigas Family or Rigas Family private company and Adelphia, whether at work or in a social setting, please refer all contacts to the Legal Department by using the following procedures:

1. If the contact is direct (either in person or by phone) the person making the contact should be told that it would be inappropriate to answer any questions or provide any information.
2. Tell the individual that all contacts should be referred to Leslie Brown, Gene Fitzmaurice or Randy Fisher.
3. The Adelphia employee who has received the contact should both make the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same procedures should be followed for any direct contact from any former Adelphia executive currently under indictment, or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives.

**Social Settings**
In addition to the telephone procedures described above, employees should use good judgment if they find themselves in situations where members of the Rigas family, the former Adelphia executives currently under indictment or employees of the Rigas Family private companies are also present (e.g., events, conferences, professional or civic related gatherings, etc.). The company requires that if such meetings occur, employees will not disclose or divulge any confidential information concerning the Company, the ongoing investigation or the bankruptcy proceeding.  All employees must report all such contacts with Rigas family members or former Adelphia executives currently under indictment to the Legal Department.

**Indirect Contact**
In the case of an indirect contact (such as a voice mail from a member of the Rigas Family) employees should use the following procedures:

1. Report the contact to the Legal Department immediately.
2. Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

government agencies and litigation counsel for review. After any required review, the Legal Department will, on a case-by-case basis, refer the matter to the appropriate business people within the Company for the requisite action on each matter.

## Business Conduct

No employee is authorized to agree to any transaction or course of conduct with the Rigas Family, an employee of a Rigas Family private company, any former Adelphia executive currently under indictment or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives on any issue on behalf of Adelphia, regardless of its size or consequence. All transactions or course of conduct must now be referred to the legal department where any transaction or occurrence may be reviewed by the company's litigation counsel, the United States Attorney's Office in New York and Pennsylvania, the Securities and Exchange Commission as well as representatives of the United States Internal Revenue Service. Once that review has been completed, if appropriate, the matter will then be referred back to the appropriate business people for any required action.

Following these procedures will be in the best interest of the Company. Please ensure that you and those around you implement these procedures immediately. If you have any questions regarding these procedures, please contact Leslie Brown, Gene Fitzmaurice or Randy Fisher in the Legal Department.

3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York .

| | |
|---|---|
| John J. Rigas and Timothy J. Rigas | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 11-cv-6964 (KMW) |
| United States of America | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A.

| Place: Dilworth Paxson LLP, 99 Park Avenue, Suite 320, New York, NY 10016 | Date and Time: March 30, 2016 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2-17-16

CLERK OF COURT

OR

*Signature of Clerk or Deputy Clerk*
USDJ

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* John J. Rigas and Timothy J. Rigas                                        , who issues or requests this subpoena, are:
Christie Callahan Comerford, Esq., Dilworth Paxson LLP, 1500 Market St., Suite 3500E, Philadelphia, PA 19102. 215-575-7187; ccomerford@dilworthlaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## EXHIBIT "A"

Document requests directed to Adelphia Communications Corporation, as revised by Judge Wood's May 15, 2015 Order.

## A.    Document Requests

1.    All documents identifying or concerning each communication, conversation and meeting between the Government and Adelphia relating to the following subject matter:

a.    Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to Petitioners, including but not limited to how the Government would view such advancement, indemnification or payment of legal costs and the timing and basis of such decision.

b.    Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to any other current or former Adelphia officer, director or employee or prospective Adelphia director in relation to any ongoing law enforcement investigation, including the timing and basis of such decision.

c.    Adelphia's practices with respect to advancement, indemnification or payment of legal costs incurred by its present or former officers, directors or employees in defense of civil, criminal or administrative matters in the past.

d.    What actions Adelphia would, should or did take to assist the government in its investigation or prosecution of Petitioners, and what requests were made of Adelphia by the Government, including but not limited to what actions the government would consider to reflect Adelphia's "cooperation."

e.    What actions Adelphia would or could take to help it to avoid criminal indictment.

f.    What role, participation or oversight the government would have with respect to the investigation conducted by Adelphia's Special Committee.

g.    Whether Adelphia should prevent or place restrictions upon its employees talking to Petitioners or their representatives, including but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.

h.    The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether Petitioners should resign and/or be terminated as officers or directors of Adelphia.

i.     Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

j.     Whether any law firm retained by Adelphia, Petitioners and/or other Adelphia officers and directors should represent, or continue to represent, Petitioners.

k.     Whether the government and/or Adelphia would or should oppose, or seek to enjoin, efforts by Petitioners to gain access to other funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance.

l.     Whether the Government had any input into what form Adelphia turned over documents or other information to Petitioners and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.

m.    The Holder Memorandum.

n.    The Thompson Memorandum.

o.    Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

(i)    Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

(ii)   Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

(iii)  Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

(iv)  Adelphia's willingness to make witnesses available.

(v)   Adelphia's willingness to disclose the complete results of its internal investigation.

(vi)  Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

(vii)   Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.     All internal Adelphia documents identifying or concerning communications, conversations, and meetings between the Government and Adelphia relating to the subject matters identified in requests 1(a)-(o), as modified.

3.     All documents relating to conversations between Adelphia and any third party identifying or concerning communications, conversations, and meetings between the Government and Adelphia concerning the subject matters identified in requests 1(a)-(o), as modified.

4.     All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.     All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.     All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to Petitioners.

7.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to refuse indemnification or advancement of defense costs to Petitioners.

8.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to Petieners by the Rigas Family Entities.

9.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

10.    Minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

11.    Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

12.     Minutes of all meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

13.     Any notes taken by attendees at meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

14.     All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

15.     All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

16.     All documents relating to a joint defense between members of the Rigas Family and Adelphia.

**B.**     **Definitions and Instructions**

1.     The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.     The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas Family members and entities.  The term Special Committee includes its outside counsel, Covington & Burling.

3.     The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4.     The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5.     The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6.     The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled "*Federal Prosecution of Business Organizations.*"

7.    The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations."*

8.    A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9.    A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10.    The term "document[s]" includes any writing, charts or data compilation **(including electronically stored information)**, and includes, without limitation: notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments. A draft or non-identical copy is a separate document within the meaning of this term.

11.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12.    The term "to identify" means as follows:

    a.    when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

    b.    when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document; d) the author(s), addressee(s), and recipient(s);

    c.    when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state the mode of communication; and c) to identify each person who was present or participated therein.

13.    The terms "all", "each" and "any" mean "all/each/any".

14.    The connectives "and" and "or" mean "and/or".

15.    The use of the singular form of any word includes the plural and vice versa.

16.    If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances

giving rise to the privilege, and shall also provide the following information in log form:  a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.    Where a requested communication was oral, the subpoenaed entity shall provide the following information:  (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.    Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"



Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915
    Phone    814.274.9350
    Fax       814.274.7782

---

Memorandum

| | |
|---|---|
| Date | October 14, 2002 |
| To | All Employees |
| From | Randall D. Fisher, Vice President and General Counsel |
| Regarding | Contact with members of the Rigas Family, employees of Rigas Family private companies or former employees indicted by the Federal Government |
| Cc | Erkie Kallbourne, Ron Stengel, Dan Liberatore, Bob Legge, Chris Dunstan |

As a reminder, the Company is still under investigation by the United States Attorneys office in both New York and Pennsylvania as part of ongoing investigations, which have resulted in indictments of three members of the Rigas Family as well as two former executives of Adelphia. Employees should be aware that the Securities and Exchange Commission has sued Adelphia, the Rigas Family and the former Adelphia executives for alleged violations of securities laws. The Company is committed to cooperating with these federal agencies, because it is the right thing to do and because cooperation with the government will help recover damages done by the Rigases and will help the Company avoid prosecution. Adelphia continues to cooperate with these government agencies by reviewing with the government both its transactions and its communications with members of the Rigas Family, Rigas Family private entities employees, former Adelphia executives under indictment or any of their actual or purported counsel or representatives. Additionally, beginning later this week, the Company will be cooperating with agents of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

procedures regarding contact with either any member of the Rigas Family, any
employee of any of the Rigas Family private companies, any former executive of
Adelphia currently under Indictment or any of their actual or purported counsel or
representatives..

**Direct Contact**
It has come to the attention of the Company that members of the Rigas family have
been attempting to contact certain Company employees on various issues.  In the case
of any contact regarding a business matter between the Rigas Family or Rigas Family
private company and Adelphia, whether at work or in a social setting, please refer all
contacts to the Legal Department by using the following procedures:

1. If the contact is direct (either in person or by phone) the person making
   the contact should be told that it would be inappropriate to answer any
   questions or provide any information.
2. Tell the individual that all contacts should be referred to Leslie Brown,
   Gene Fitzmaurice or Randy Fisher.
3. The Adelphia employee who has received the contact should both make
   the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same
procedures should be followed for any direct contact from any former Adelphia
executive currently under indictment, or any of the Rigas Family or these former
Adelphia executives' actual or purported counsel or representatives.

**Social Settings**
In addition to the telephone procedures described above, employees should use good
judgment if they find themselves in situations where members of the Rigas family,
the former Adelphia executives currently under indictment or employees of the Rigas
Family private companies are also present (e.g., events, conferences, professional or
civic related gatherings, etc.). The company requires that if such meetings occur,
employees will not disclose or divulge any confidential information concerning the
Company, the ongoing investigation or the bankruptcy proceeding.  All employees
must report all such contacts with Rigas family members or former Adelphia
executives currently under indictment to the Legal Department.

**Indirect Contact**
In the case of an indirect contact (such as a voice mail from a member of the Rigas
Family) employees should use the following procedures:

1. Report the contact to the Legal Department immediately.
2. Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

*Rigas Family Contact Memo 10-12-02*

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

government agencies and litigation counsel for review. After any required review, the Legal Department will, on a case-by-case basis, refer the matter to the appropriate business people within the Company for the requisite action on each matter.

### Business Conduct

No employee is authorized to agree to any transaction or course of conduct with the Rigas Family, an employee of a Rigas Family private company, any former Adelphia executive currently under indictment or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives on any issue on behalf of Adelphia, regardless of its size or consequence. All transactions or course of conduct must now be referred to the legal department where any transaction or occurrence may be reviewed by the company's litigation counsel, the United States Attorney's Office in New York and Pennsylvania, the Securities and Exchange Commission as well as representatives of the United States Internal Revenue Service. Once that review has been completed, if appropriate, the matter will then be referred back to the appropriate business people for any required action.

Following these procedures will be in the best interest of the Company. Please ensure that you and those around you implement these procedures immediately. If you have any questions regarding these procedures, please contact Leslie Brown, Gene Fitzmaurice or Randy Fisher in the Legal Department.

3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| John J. Rigas and Timothy J. Rigas | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   11-cv-6964 (KMW) |
| United States of America | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Boies, Schiller & Flexner LLP, 575 Lexington Avenue, 7th Floor, New York, NY 10022

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SEE ATTACHED EXHIBIT A.

| Place: Dilworth Paxson LLP, 99 Park Avenue, Suite 320, New York, NY 10016 | Date and Time:<br>March 30, 2016 at 10:00 a.m. |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2-17-16

~~CLERK OF COURT~~

OR

_Christie M. Word_
~~Signature of Clerk or Deputy Clerk~~
U.S.D.J.

_Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ John J. Rigas and Timothy J. Rigas _____, who issues or requests this subpoena, are:
Christie Callahan Comerford, Esq., Dilworth Paxson LLP, 1500 Market St., Suite 3500E, Philadelphia, PA 19102.
215-575-7187; ccomerford@dilworthlaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## EXHIBIT "A"

Document requests directed to Adelphia Communications Corporation, as revised by Judge Wood's May 15, 2015 Order.

**A.   Document Requests**

1.     All documents identifying or concerning each communication, conversation and meeting between the Government and Adelphia relating to the following subject matter:

  a.  Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to Petitioners, including but not limited to how the Government would view such advancement, indemnification or payment of legal costs and the timing and basis of such decision.

  b.  Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to any other current or former Adelphia officer, director or employee or prospective Adelphia director in relation to any ongoing law enforcement investigation, including the timing and basis of such decision.

  c.  Adelphia's practices with respect to advancement, indemnification or payment of legal costs incurred by its present or former officers, directors or employees in defense of civil, criminal or administrative matters in the past.

  d.  What actions Adelphia would, should or did take to assist the government in its investigation or prosecution of Petitioners, and what requests were made of Adelphia by the Government, including but not limited to what actions the government would consider to reflect Adelphia's "cooperation."

  e.  What actions Adelphia would or could take to help it to avoid criminal indictment.

  f.  What role, participation or oversight the government would have with respect to the investigation conducted by Adelphia's Special Committee.

  g.  Whether Adelphia should prevent or place restrictions upon its employees talking to Petitioners or their representatives, including but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.

  h.  The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether Petitioners should resign and/or be terminated as officers or directors of Adelphia.

i.     Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

j.     Whether any law firm retained by Adelphia, Petitioners and/or other Adelphia officers and directors should represent, or continue to represent, Petitioners.

k.     Whether the government and/or Adelphia would or should oppose, or seek to enjoin, efforts by Petitioners to gain access to other funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance.

l.     Whether the Government had any input into what form Adelphia turned over documents or other information to Petitioners and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.

m.     The Holder Memorandum.

n.     The Thompson Memorandum.

o.     Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

(i)     Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

(ii)     Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

(iii)     Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

(iv)     Adelphia's willingness to make witnesses available.

(v)     Adelphia's willingness to disclose the complete results of its internal investigation.

(vi)     Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

(vii)   Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.   All internal Adelphia documents identifying or concerning communications, conversations, and meetings between the Government and Adelphia relating to the subject matters identified in requests 1(a)-(o), as modified.

3.   All documents relating to conversations between Adelphia and any third party identifying or concerning communications, conversations, and meetings between the Government and Adelphia concerning the subject matters identified in requests 1(a)-(o), as modified.

4.   All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.   All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.   All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to Petitioners.

7.   To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to refuse indemnification or advancement of defense costs to Petitioners.

8.   To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to Petioners by the Rigas Family Entities.

9.   To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

10.   Minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005. Any redactions for privilege shall be set forth in the privilege log described *infra*.

11.   Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005. Any redactions for privilege shall be set forth in the privilege log described *infra*.

12.     Minutes of all meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

13.     Any notes taken by attendees at meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

14.     All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

15.     All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

16.     All documents relating to a joint defense between members of the Rigas Family and Adelphia.

## B.     Definitions and Instructions

1.     The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.     The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas Family members and entities.   The term Special Committee includes its outside counsel, Covington & Burling.

3.     The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4.     The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5.     The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6.     The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled "*Federal Prosecution of Business Organizations.*"

7. The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations.*

8. A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9. A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10. The term "document[s]" includes any writing, charts or data compilation **(including electronically stored information)**, and includes, without limitation: notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments. A draft or non-identical copy is a separate document within the meaning of this term.

11. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12. The term "to identify" means as follows:

    a. when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

    b. when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document; d) the author(s), addressee(s), and recipient(s);

    c. when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state the mode of communication; and c) to identify each person who was present or participated therein.

13. The terms "all", "each" and "any" mean "all/each/any".

14. The connectives "and" and "or" mean "and/or".

15. The use of the singular form of any word includes the plural and vice versa.

16. If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances

giving rise to the privilege, and shall also provide the following information in log form:  a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.     Where a requested communication was oral, the subpoenaed entity shall provide the following information:  (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.     Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"



Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915
Phone   814.274.9360
Fax      814.274.7762

---

Memorandum

| | |
|---|---|
| Date | October 14, 2002 |
| To | All Employees |
| From | Randall D. Fisher, Vice President and General Counsel |
| Regarding | Contact with members of the Rigas Family, employees of Rigas Family private companies or former employees indicted by the Federal Government |
| Cc | Erkie Kailbourne, Ron Stengel, Dan Liberatore, Bob Legge, Chris Dunstan |

As a reminder, the Company is still under investigation by the United States
Attorneys office in both New York and Pennsylvania as part of ongoing
investigations, which have resulted in indictments of three members of the Rigas
Family as well as two former executives of Adelphia. Employees should be aware
that the Securities and Exchange Commission has sued Adelphia, the Rigas Family
and the former Adelphia executives for alleged violations of securities laws. The
Company is committed to cooperating with these federal agencies, because it is the
right thing to do and because cooperation with the government will help
recover damages done by the Rigases and will help the Company avoid prosecution.
Adelphia continues to cooperate with these government agencies by reviewing with
the government both its transactions and its communications with members of the
Rigas Family, Rigas Family private entities employees, former Adelphia executives
under indictment or any of their actual or purported counsel or representatives.
Additionally, beginning later this week, the Company will be cooperating with agents
of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia
continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

Rigas Family Contact Memo 10-12-02

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

procedures regarding contact with either any member of the Rigas Family, any
employee of any of the Rigas Family private companies, any former executive of
Adelphia currently under indictment or any of their actual or purported counsel or
representatives..

**Direct Contact**

It has come to the attention of the Company that members of the Rigas family have
been attempting to contact certain Company employees on various issues.  In the case
of any contact regarding a business matter between the Rigas Family or Rigas Family
private company and Adelphia, whether at work or in a social setting, please refer all
contacts to the Legal Department by using the following procedures:

1. If the contact is direct (either in person or by phone) the person making
   the contact should be told that it would be inappropriate to answer any
   questions or provide any information.
2. Tell the individual that all contacts should be referred to Leslie Brown,
   Gene Fitzmaurice or Randy Fisher.
3. The Adelphia employee who has received the contact should both make
   the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same
procedures should be followed for any direct contact from any former Adelphia
executive currently under indictment, or any of the Rigas Family or these former
Adelphia executives' actual or purported counsel or representatives.

**Social Settings**

In addition to the telephone procedures described above, employees should use good
judgment if they find themselves in situations where members of the Rigas family,
the former Adelphia executives currently under indictment or employees of the Rigas
Family private companies are also present (e.g., events, conferences, professional or
civic related gatherings, etc.). The company requires that if such meetings occur,
employees will not disclose or divulge any confidential information concerning the
Company, the ongoing investigation or the bankruptcy proceeding.  All employees
must report all such contacts with Rigas family members or former Adelphia
executives currently under indictment to the Legal Department.

**Indirect Contact**

In the case of an indirect contact (such as a voice mail from a member of the Rigas
Family) employees should use the following procedures:

1. Report the contact to the Legal Department immediately.
2. Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

*Rigas Family Contact Memo 10-12-02*

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

government agencies and litigation counsel for review. After any required review, the Legal Department will, on a case-by-case basis, refer the matter to the appropriate business people within the Company for the requisite action on each matter.

**Business Conduct**

No employee is authorized to agree to any transaction or course of conduct with the Rigas Family, an employee of a Rigas Family private company, any former Adelphia executive currently under indictment or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives on any issue on behalf of Adelphia, regardless of its size or consequence. All transactions or course of conduct must now be referred to the legal department where any transaction or occurrence may be reviewed by the company's litigation counsel, the United States Attorney's Office in New York and Pennsylvania, the Securities and Exchange Commission as well as representatives of the United States Internal Revenue Service. Once that review has been completed, if appropriate, the matter will then be referred back to the appropriate business people for any required action.

Following these procedures will be in the best interest of the Company. Please ensure that you and those around you implement these procedures immediately. If you have any questions regarding these procedures, please contact Leslie Brown, Gene Fitzmaurice or Randy Fisher in the Legal Department.

3

Rigas Family Conduct Memo 10-12-02

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| John J. Rigas and Timothy J. Rigas | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   11-cv-6964 (KMW) |
| United States of America | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Covington & Burling LLP, 629 Eighth Avenue, New York, NY 10018

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
   See attached Exhibit A

| Place: Dilworth Paxson LLP, 99 Park Avenue, Suite 320, New York, NY 10016 | Date and Time: March 30, 2016 at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   2-17-16

    CLERK OF COURT

    *[signature]*       OR

    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*
    USDJ

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   John J. Rigas and Timothy J. Rigas                       , who issues or requests this subpoena, are:
Christie Callahan Comerford, Esq., Dilworth Paxson LLP, 1500 Marker St, Ste 3500E, Philadelphia, PA 19102, 215-575-7187; ccomerford@dilworthlaw.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## EXHIBIT "A"

Document requests directed to Adelphia Communications Corporation, as revised by Judge Wood's May 15, 2015 Order.

**A.   Document Requests**

1.      All documents identifying or concerning each communication, conversation and meeting between the Government and Adelphia relating to the following subject matter:

a.      Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to Petitioners, including but not limited to how the Government would view such advancement, indemnification or payment of legal costs and the timing and basis of such decision.

b.      Whether Adelphia would or should provide advancement, indemnification or payment of legal costs to any other current or former Adelphia officer, director or employee or prospective Adelphia director in relation to any ongoing law enforcement investigation, including the timing and basis of such decision.

c.      Adelphia's practices with respect to advancement, indemnification or payment of legal costs incurred by its present or former officers, directors or employees in defense of civil, criminal or administrative matters in the past.

d.      What actions Adelphia would, should or did take to assist the government in its investigation or prosecution of Petitioners, and what requests were made of Adelphia by the Government, including but not limited to what actions the government would consider to reflect Adelphia's "cooperation."

e.      What actions Adelphia would or could take to help it to avoid criminal indictment.

f.      What role, participation or oversight the government would have with respect to the investigation conducted by Adelphia's Special Committee.

g.      Whether Adelphia should prevent or place restrictions upon its employees talking to Petitioners or their representatives, including but not limited to whether the government had any input into the October 14, 2002 Memo from Randall D. Fisher to Adelphia employees attached as Exhibit "1" to these requests.

h.      The Government's position and/or demands with respect to Adelphia's corporate governance and control, including whether Petitioners should resign and/or be terminated as officers or directors of Adelphia.

i.      Whether Adelphia should make or refuse to make payments to John Rigas and/or Timothy Rigas pursuant to the terms of their respective severance agreements with Adelphia.

j.      Whether any law firm retained by Adelphia, Petitioners and/or other Adelphia officers and directors should represent, or continue to represent, Petitioners.

k.      Whether the government and/or Adelphia would or should oppose, or seek to enjoin, efforts by Petitioners to gain access to other funds which potentially could be used to pay defense costs, including but not limited to assets held by the Rigas Family, assets belonging to the Rigas Managed Entities, assets allegedly owned by Adelphia and/or the proceeds from any policy of insurance.

l.      Whether the Government had any input into what form Adelphia turned over documents or  other information to Petitioners and defense counsel, including but not limited to whether Adelphia was required to provide (or prohibited from providing) that information in a searchable database.

m.      The Holder Memorandum.

n.      The Thompson Memorandum.

o.      Whether the Government could or would consider the following factors discussed in the "cooperation and voluntary disclosure" section of the Holder Memorandum and the Thompson Memorandum in weighing the extent of Adelphia's cooperation and in determining whether the government would seek an indictment of Adelphia:

(i)      Advancement, indemnification or payment of legal costs to present or former officers, directors or employees of Adelphia.

(ii)     Adelphia's "willingness to identify the culprits within the corporation, including senior executives."

(iii)    Adelphia's retention of allegedly culpable employees "without sanction for their misconduct."

(iv)    Adelphia's willingness to make witnesses available.

(v)     Adelphia's willingness to disclose the complete results of its internal investigation.

(vi)    Adelphia's willingness to waive the attorney-client and work product privileges (including whether the Government requested such a waiver).

(vii)   Adelphia's decision to provide information about the Government's investigation to allegedly culpable employees pursuant to a joint defense agreement.

2.     All internal Adelphia documents identifying or concerning communications, conversations, and meetings between the Government and Adelphia relating to the subject matters identified in requests 1(a)-(o), as modified.

3.     All documents relating to conversations between Adelphia and any third party identifying or concerning communications, conversations, and meetings between the Government and Adelphia concerning the subject matters identified in requests 1(a)-(o), as modified.

4.     All documents concerning whether Adelphia would or should provide indemnification or advancement of defense costs to any other current or former Adelphia officer, director or employee in relation with any ongoing law enforcement investigation or criminal proceeding relating to the events described in the indictment for *United States v. Rigas*, No. 02-Cr-1236 (S.D.N.Y.).

5.     All documents reflecting or relating to whether Adelphia previously indemnified or advanced defense costs incurred by any current or former Adelphia officer, director or employee who was made a party to any criminal or administrative action or investigation by reason of the fact that such person is or was a director, officer or employee of Adelphia.

6.     All documents reflecting or relating to Adelphia's reasons for determining that it would not indemnify or advance defense costs (or that it would cease indemnifying or advancing defense costs) to Petitioners.

7.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to refuse indemnification or advancement of defense costs to Petitioners.

8.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether the Government requested or pressured Adelphia to oppose advancement of defense costs to Petioners by the Rigas Family Entities.

9.     To the extent not already provided in response to the previous requests, all documents reflecting or relating to whether Adelphia would have indemnified or advanced defense costs to John Rigas or Timothy Rigas absent government pressure and/or Adelphia's desire to cooperate with the government.

10.     Minutes for meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

11.     Any notes taken by attendees at meetings of the Adelphia Board of Directors from March 27, 2002 through October 31, 2005.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

12.     Minutes of all meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

13.     Any notes taken by attendees at meetings of the Special Committee.  Any redactions for privilege shall be set forth in the privilege log described *infra*.

14.     All documents relating to or reflecting communications with the SEC regarding the meeting between Adelphia, Deloitte & Touche and the SEC occurring on or about May 9, 2002.

15.     All documents relating to any input that the Government had with respect to the May 23, 2002 Agreement between Adelphia and Rigas Family members.

16.     All documents relating to a joint defense between members of the Rigas Family and Adelphia.

## B.     **Definitions and Instructions**

1.     The term "Adelphia" means Adelphia Communications Corp. and its present or former officers, directors, employees, agents and attorneys, including outside counsel and the Special Committee.

2.     The term "Special Committee" means the Special Committee of Adelphia's Board of Directors appointed on or about March 6, 2002 to investigate a broad range of accounting matters, disclosure issues and related party transactions between Adelphia entities and Rigas Family members and entities.   The term Special Committee includes its outside counsel, Covington & Burling.

3.     The term "Rigas Family" means John Rigas, Timothy Rigas, Michael Rigas and James Rigas or any one or more of them, separately or together.

4.     The term "Rigas Family Entity" means a privately held and managed company owned by the Rigas Family

5.     The term "Government" means the United States Department of Justice ("DOJ"), including prosecutors in the Office of the United States Attorney for the Southern District of New York, agents, attorneys or inspectors for the Securities and Exchange Commission; postal inspectors; agents, attorneys or inspectors of other federal agencies; and any and all personnel employed or assigned to investigate or prosecute violations by Adelphia or any of its current or former officers, directors or employees for violations of the criminal laws from the period of 2002 through the present.

6.     The term "Holder Memorandum" means the June 1999 memorandum issued by then-Deputy Attorney General Eric Holder entitled "*Federal Prosecution of Business Organizations.*"

7.     The term "Thompson Memorandum" means the January 30, 2003 memorandum issued by then-Deputy Attorney General Larry D. Thompson entitled *Principles of Federal Prosecution of Business Organizations.*"

8.     A reference to "current or former Adelphia officers, directors or employees" includes (but is not limited to) John Rigas, Timothy Rigas, Michael Rigas, James Rigas, Michael Mulcahey, James Brown, Timothy Werth, Leslie Gelber, Dennis Coyle, Peter Metros, Karen Chrosniak, Dean Marshall, Doug Malone, Peter Venetos, Erland Kailbourne Ed Hartman, Colin Higgin, Ed Babcock, Mike Brady, Randy Fischer, Luke Healy, Ann Montgomery, Ron Rapp, Keith Horn and Carla Brown.

9.     A reference to "prospective Adelphia directors" means persons under consideration for a seat on Adelphia's Board of Directors following the resignations of John and Timothy Rigas, including but is not limited to Dan Milliard and Leo Ferraro.

10.     The term "document[s]" includes any writing, charts or data compilation **(including electronically stored information)**, and includes, without limitation:  notes, lists, agreements, by-laws, minutes (including Board minutes), agendas, calendars and planners, messages, message logs, memoranda, correspondence, email and attachments.  A draft or non-identical copy is a separate document within the meaning of this term.

11.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether written or oral.

12.     The term "to identify" means as follows:

    a.     when referring to a person, "to identify" means to give, to the extent known, the person's full name, business address and business title or affiliation;

    b.     when referring to a document, "to identify" means to give: a) the type of document; b) the general subject matter; c) the date of the document; d) the author(s), addressee(s), and recipient(s);

    c.     when referring to a meeting or oral communication, "to identify" means: a) to state the date and place of the meeting or communication; b) to state the mode of communication; and c) to identify each person who was present or participated therein.

13.     The terms "all", "each" and "any" mean "all/each/any".

14.     The connectives "and" and "or" mean "and/or".

15.     The use of the singular form of any word includes the plural and vice versa.

16.     If a claim of privilege is asserted in objecting to any request for information or documents and an answer is not provided on the basis of such assertion, the objecting entity shall identify the nature of the privilege, including a brief description of the facts and circumstances

giving rise to the privilege, and shall also provide the following information in log form:  a) the type of document; b) the general subject matter of the document; c) the date of the document; d) such other information as is necessary to identify the basis for privilege, including, where appropriate: the author(s), the addressee(s), the recipient(s), and their relationship to one another.

17.    Where a requested communication was oral, the subpoenaed entity shall provide the following information:  (a) the name of the person making the communication and the names of the persons present while the communication was made, and when not apparent, their relationship to one another; (b) the date and place of the communication; and c) the general subject matter of the communication.

18.    Where a document is redacted (for example, to avoid revealing other prosecutions or investigatory matters unrelated to this case, or to safeguard confidentiality and privacy where appropriate), the document produced should so indicate on its face.

Exhibit "1"



Randall D. Fisher
Vice President and General Counsel
One North Main Street
Coudersport, PA 16915
    Phone   814.274.9350
    Fax     814.274.7782

---

Memorandum

| | |
|---|---|
| Date | October 14, 2002 |
| To | All Employees |
| From | Randall D. Fisher, Vice President and General Counsel |
| Regarding | Contact with members of the Rigas Family, employees of Rigas Family private companies or former employees indicted by the Federal Government |
| Cc | Erkie Kailbourne, Ron Stengel, Dan Liberatore, Bob Legge, Chris Dunstan |

As a reminder, the Company is still under investigation by the United States Attorneys office in both New York and Pennsylvania as part of ongoing investigations, which have resulted in indictments of three members of the Rigas Family as well as two former executives of Adelphia. Employees should be aware that the Securities and Exchange Commission has sued Adelphia, the Rigas Family and the former Adelphia executives for alleged violations of securities laws. The Company is committed to cooperating with these federal agencies, because it is the right thing to do and because cooperation with the government will help recover damages done by the Rigases and will help the Company avoid prosecution. Adelphia continues to cooperate with these government agencies by reviewing with the government both its transactions and its communications with members of the Rigas Family, Rigas Family private entities employees, former Adelphia executives under indictment or any of their actual or purported counsel or representatives. Additionally, beginning later this week, the Company will be cooperating with agents of the Internal Revenue Service in investigations of the Rigas Family. Also, Adelphia continues to pursue its own claims against the Rigas Family.

As part of this process, I have been asked to direct everyone to use the following

1

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

procedures regarding contact with either any member of the Rigas Family, any employee of any of the Rigas Family private companies, any former executive of Adelphia currently under Indictment or any of their actual or purported counsel or representatives..

**Direct Contact**
It has come to the attention of the Company that members of the Rigas family have been attempting to contact certain Company employees on various issues.  In the case of any contact regarding a business matter between the Rigas Family or Rigas Family private company and Adelphia, whether at work or in a social setting, please refer all contacts to the Legal Department by using the following procedures:

1.  If the contact is direct (either in person or by phone) the person making the contact should be told that it would be inappropriate to answer any questions or provide any information.
2.  Tell the individual that all contacts should be referred to Leslie Brown, Gene Fitzmaurice or Randy Fisher.
3.  The Adelphia employee who has received the contact should both make the referral and report the contact to the Legal Department as well.

There is no exception to this situation. Should the situation arise, these same procedures should be followed for any direct contact from any former Adelphia executive currently under indictment, or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives.

**Social Settings**
In addition to the telephone procedures described above, employees should use good judgment if they find themselves in situations where members of the Rigas family, the former Adelphia executives currently under indictment or employees of the Rigas Family private companies are also present (e.g., events, conferences, professional or civic related gatherings, etc.). The company requires that if such meetings occur, employees will not disclose or divulge any confidential information concerning the Company, the ongoing investigation or the bankruptcy proceeding.  All employees must report all such contacts with Rigas family members or former Adelphia executives currently under indictment to the Legal Department.

**Indirect Contact**
In the case of an indirect contact (such as a voice mail from a member of the Rigas Family) employees should use the following procedures:

1.  Report the contact to the Legal Department immediately.
2.  Do not attempt to return the phone call.

The Legal Department will review the matter and may refer the matter to appropriate

2

Procedures for Contact from Rigas Family,
Private Companies, Indicted Former Employees
October 14, 2002

government agencies and litigation counsel for review. After any required review, the Legal Department will, on a case-by-case basis, refer the matter to the appropriate business people within the Company for the requisite action on each matter.

## Business Conduct

No employee is authorized to agree to any transaction or course of conduct with the Rigas Family, an employee of a Rigas Family private company, any former Adelphia executive currently under indictment or any of the Rigas Family or these former Adelphia executives' actual or purported counsel or representatives on any issue on behalf of Adelphia, regardless of its size or consequence. All transactions or course of conduct must now be referred to the legal department where any transaction or occurrence may be reviewed by the company's litigation counsel, the United States Attorney's Office in New York and Pennsylvania, the Securities and Exchange Commission as well as representatives of the United States Internal Revenue Service. Once that review has been completed, if appropriate, the matter will then be referred back to the appropriate business people for any required action.

Following these procedures will be in the best interest of the Company. Please ensure that you and those around you implement these procedures immediately. If you have any questions regarding these procedures, please contact Leslie Brown, Gene Fitzmaurice or Randy Fisher in the Legal Department.

3

Rigas Family Conduct Memo 10-12-02