UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOHN J. RIGAS and TIMOTHY J. RIGAS,

                Petitioners,                  11-CV-6964 (KMW)
                                            **OPINION & ORDER**

        -against-

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

      In connection with their ongoing habeas petition, Petitioners John and Timothy Rigas

seek to compel non-party Patrick M. McLaughlin to produce documents containing his notes

taken during a series of meetings that took place in 2004 between federal prosecutors and Carl

Rothenberger. (Mot. to Compel [Doc. No. 103]). After reviewing those documents *in camera*,

the Court GRANTS Petitioners' motion to compel.

## I.     RELEVANT BACKGROUND

      Petitioners were tried in 2004 on charges of securities fraud, bank fraud, and conspiracy

related to their conduct as executives of Adelphia Communications Corporation ("Adelphia").

*See* (Aug 25, 2015 Order, 1 [Doc. No. 87]). On February 20, 2004—shortly before the trial

commenced—the prosecution interviewed Carl Rothenberger, a Buchanan Ingersoll lawyer who

had served as Adelphia's outside counsel. *Id.* Petitioners now claim that during the February 20,

2004 meeting, Rothenberger provided information to the prosecution that was materially

exculpatory, and that the prosecution failed to disclose this information in violation of its

obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). (Mot. to Compel, 4). McLaughlin

attended the meeting as Rothenberger's personal attorney. (Opp'n to Pet'rs' Mot. to Compel ("Opp'n"), 6 [Doc. No. 106]).

On June 20, 2014, this Court granted Petitioners' motion for discovery of notes of the Government's meeting with Rothenberger. (June 20, 2014 Order, [Doc. No. 39]); (Aug. 20, 2014 Order [Doc. No. 47]). Petitioners subsequently identified two sets of documents that they believed were responsive to this order: (1) three memoranda in the possession of Buchanan Ingersoll that were created in the days immediately following the interview and that contained factual summaries of the interview (the "Buchanan Ingersoll documents"),[1] and (2) contemporaneous notes taken during the interview itself by McLaughlin (the "McLaughlin notes"). Buchanan Ingersoll and McLaughlin refused to produce the requested documents, and Petitioners filed separate motions to compel the production of each set of documents.[2] *See* (Mot. to Compel Buchanan Ingersoll, [Doc. No. 62]); (Apr. 15, 2015 Mot. to Compel Rothenberger and McLaughlin, [Doc. No. 78]).

In August 2015, this Court granted Petitioners' motion to compel the Buchanan Ingersoll documents. After reviewing the documents *in camera*, the Court rejected Buchanan Ingersoll's

---

[1] The documents identified by Buchanan Ingersoll are (1) a February 22, 2004 typewritten summary of the Rothenberger interview, prepared by Jerry Richey, then Buchanan Ingersoll's in-house counsel, based on his conversation with Jerry Johnson, who attended the interview as Buchanan Ingersoll's criminal counsel; (2) a February 23, 2004 memorandum from Johnson to Richey, Sue Friedberg (another Buchanan Ingersoll attorney), and Patrick McLaughlin summarizing and commenting on the interview; and (3) a February 26, 2004 response to Johnson's memorandum by McLaughlin, containing edits and a supplemental factual summary of the interview.

[2] After receiving the subpoena, Buchanan Ingersoll argued that it was not bound to produce documents in McLaughlin's possession because he attended the meeting in his capacity as a representative of Rothenberger individually. Rather than litigate the scope of the original subpoena, Petitioners requested that the Court instead issue a new subpoena, this time to McLaughlin, directing him to produce "All minutes, notes, memoranda, or other writings in [his] possession that were taken at, or relate to, any meetings between the Government and Carl Rothenberger during the period from March 27, 2002 to October 31, 2013." (Pet'rs' Mar. 16, 2015 Ltr., 2 [Doc. No. 75]). The Court did so, and McLaughlin refused to produce documents in response to the new subpoena. *See* (Mot. to Compel, 2-3). Petitioners then brought a motion to compel in this Court, (Apr. 15, 2015 Mot. to Compel, [Doc. No. 78]), but after learning that McLaughlin did not consent to litigate the motion here, rather than in the compliance district (the Northern District of Ohio), Petitioners withdrew their motion. (Pet'rs' June 12, 2015 Ltr., [Doc. No. 85]); (June 12, 2015 Order, [Doc. No. 86]).

arguments that the factual summaries contained in the Buchanan Ingersoll documents were shielded from discovery by attorney-client privilege and the work product doctrine, and ordered that the documents be produced to Petitioners, subject to certain redactions. (Aug. 25, 2015 Order, 3). In particular, the Court held that the Buchanan Ingersoll documents did not qualify for work product protection because, as a non-party, Buchanan Ingersoll was not entitled to claim the protections afforded by Federal Rule of Civil Procedure 26(b)(3), and extending protection to the factual summaries in the Buchanan Ingersoll documents via a Rule 26(c) protective order would serve none of the purposes of the work product doctrine, as articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Id.* at 5-6. The Court also held that, even if the factual summaries did qualify for work product protection, Petitioners had made the necessary showing of "substantial need" to overcome that protection. *Id.* at 6.

Meanwhile, Petitioners moved separately to compel the production of the McLaughlin notes in the Northern District of Ohio, because McLaughlin lives and works more than 100 miles from this District. (Mot. to Compel, 6-7). At the same time, Petitioners also moved to transfer the motion to compel to this Court, pursuant to Federal Rule of Civil Procedure 45(f). *Id.* McLaughlin opposed the motion to compel on the ground that his notes were protected by the work product doctrine. On February 9, 2016, the Northern District of Ohio ordered that the motion to compel be transferred to this Court. (Mot. to Compel, Ex. A [Doc. No 103-1]). The parties submitted updated briefing on the motion, and the Court ordered McLaughlin to produce any responsive documents for *in camera* review. *See* (Apr. 4, 2016 Order [Doc. No. 110]).[3]

---

[3] McLaughlin submitted two sets of notes to the Court for *in camera* review: those from Rothenberger's February 20, 2004 meeting, and those from a later meeting between Rothenberger and federal prosecutors that took place on October 25, 2004.

## II.    DISCUSSION

McLaughlin's arguments against disclosure are unpersuasive. The Court thus grants Petitioners' motion to compel the McLaughlin notes.

First, because McLaughlin is a non-party, he is not entitled to claim the protection against disclosure articulated in Federal Rule of Civil Procedure 26(b)(3). *See Crosby v. City of New York*, 269 F.R.D. 267, 276-77 (S.D.N.Y. 2010) (Scheindlin, J.). Rather, he may benefit from work product protection only if the Court, in its discretion, chooses to apply the broader work product doctrine first articulated in *Hickman* through a Rule 26(c) protection order. *See id.* In exercising this discretion, courts are guided by the underlying purposes of the work product doctrine, as described in *Hickman*, including: (1) "protecting an attorney's ability to formulate legal theories and prepare cases"; (2) "preventing opponents from 'free-loading' off their adversaries' work"; and (3) "preventing interference with ongoing litigation." *Id.* at 277 (citing *Hickman*, 329 U.S. at 510-11, 516).

None of these considerations is implicated here, for substantially the same reasons discussed in this Court's previous decision. (Aug. 25, 2015 Order, 5.) As with the Buchanan Ingersoll documents, disclosure of the McLaughlin notes will not facilitate free-loading by Petitioners, who were not able to attend the meeting and take notes for themselves, nor is there any indication that disclosure will interfere with ongoing litigation. And disclosure will not impair any attorney's ability to formulate legal theories or prepare cases, because the Court finds that the notes do not reveal, in any meaningful way, the mental processes or legal theories of McLaughlin.

McLaughlin disagrees, contending that his notes constitute opinion work product and therefore are entitled to "virtually absolute protection." (Opp'n, 16 (quoting *Favors v. Cuomo*,

285 F.R.D. 187, 200 (E.D.N.Y. 2012))). McLaughlin asserts that because his notes "are not a

verbatim, or near verbatim, transcript of the Rothenberger interview," they inevitably reveal his

mental impressions, conclusions, and opinions by virtue of the specific statements that he chose

to record. *Id.* However, "not every item which may reveal some inkling of a lawyer's mental

impressions, conclusions, opinions, or legal theories is protected as opinion work product."

*United States v. Weisman*, No. S1 94-CR-760, 1995 WL 244522, at *5 (S.D.N.Y. Apr. 26, 1995)

(Haight, J.) (quoting *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st

Cir. 1988)); *see also F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 152 (D.C. Cir.

2015) ("[T]he mere fact that an attorney ha[s] chosen to write a fact down [is] not sufficient to

convert that fact into opinion work product."). The heightened protection afforded opinion work

product "is not triggered unless disclosure creates a real, nonspeculative danger of revealing the

lawyer's thoughts." *Weisman*, 1995 WL 244522, at *5.

The Court finds no such danger here. An attorney's contemporaneous notes of a witness's

statements do not rise to the level of opinion work product, even if those notes do not record

every word spoken or every point discussed during the interview.[4] *See In re John Doe Corp.*, 675

F.2d 482, 493 (2d Cir. 1982) (holding that attorney's notes from an interview did not reflect the

attorney's mental processes and therefore were subject to disclosure, even though the notes did

---

[4] McLaughlin cites a number of decisions from other jurisdictions holding that notes of a witness interview can be protected as opinion work product. *See* (Opp'n, 17-18). But, as those decisions acknowledge, Second Circuit law is different, and therefore these decisions are unhelpful to this Court's analysis. *See Dir. of Office of Thrift Supervision v. Vinson & Elkins, L.L.P.*, 168 F.R.D. 445, 446-47 (D.D.C. 1996) (noting that Second Circuit law is contrary to D.C. Circuit law on this point, and that decisions from both the Second Circuit and the Southern District of New York expressly acknowledge the inconsistency). Moreover, subsequent decisions of the D.C. Circuit have made clear that an attorney's notes of a witness's statements do not *automatically* qualify as opinion work product, but rather are entitled to heightened protection only if "there is some indication that the lawyer sharply focused or weeded the materials." *F.T.C. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 152 (D.C. Cir. 2015) (quoting *In re Sealed Case*, 124 F.3d 230, 236-37 (D.C. Cir. 1997) (finding that attorney's notes summarizing witness's statements "could be classified as opinion only on a virtually omnivorous view of the term")).

not record the witness's statements "word-for-word"); *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2664313, at *6-7 (S.D.N.Y. Sept. 14, 2006) (Francis, Mag. J.) ("[L]ower courts have consistently treated witness statements as factual rather than opinion work product, even when those statements have been summarized by counsel.") (collecting cases). This Court already rejected Buchanan Ingersoll's argument that factual summaries made in the days following the interview should be protected from disclosure because they revealed the attorneys' mental processes. *See* (Aug. 25, 2015 Order, 5). McLaughlin's notes thus constitute—at most— fact work product.

"Disclosure of [fact] work product may be ordered if the party seeking it can demonstrate substantial need for the information and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship." *Crosby*, 269 F.R.D. at 277. In its previous decision, this Court concluded that "[i]n light of the ongoing dispute in this action over what Rothenberger actually said during the interview . . . Petitioners have a substantial need for those additional records [i.e., the Buchanan Ingersoll documents], which they cannot obtain by any other means." (Aug. 25, 2015 Order, 6). McLaughlin argues that because Petitioners are now in possession of the Buchanan Ingersoll documents, they no longer have a substantial need for *his* contemporaneous notes of the meeting because they have already obtained the substantial equivalent. (Opp'n, 18-21). But different sets of notes can be expected to record different statements or points from a conversation, particularly one as lengthy as the interview at issue here.

As a contemporaneous record of the conversation at the heart of Petitioners' *Brady* claim, the McLaughlin notes represent the best possible source for Petitioners to discover what was actually said during the Rothenberger interview. Thus, the Court finds that, even if the notes did

qualify for work product protection, Petitioners have shown their substantial need for the

McLaughlin notes, and cannot obtain them by any other means.

**III.     CONCLUSION**

For the foregoing reasons, the Court GRANTS Petitioners' motion to compel production

of the McLaughlin notes. The Court will produce copies of the documents to Petitioners by first-

class mail.

SO ORDERED.

Dated:  New York, New York
        August 24, 2016

_____
              /s/
        Kimba M. Wood
        United States District Judge