# Exhibit 36

ADELPHIA COMMUNICATIONS CORPORATION
MINUTES OF A MEETING OF THE
BOARD OF DIRECTORS

June 1, 2002

A meeting of the Board of Directors of Adelphia Communications Corporation (the "Company") was held on June 1, 2002, at 10 a.m. at the office of Boies, Schiller & Flexner, LLP, at 570 Lexington Avenue, New York, NY. Present (either in person or by telephone conference) were: Erland Kailbourne, Chairman, Les Gelber, Dennis Coyle, Peter Venetis, Leonard Tow and Scott Schneider. Also in attendance were Stephen Fraidin, and Craig Miller, of Fried Frank Harris Shriver and Jacobsen, ("Fried Frank") representing the Company, Phil Korologos, David Boies and Christopher Boies, of Boies Schiller & Flexner, ("Boies") representing the company, Martin Auerbach, representing Mr. Venetis, Ron Stengel, of Conway Del Genio Gries & Co., representing the Company, Chris Dunstan, Chief Financial Officer and Randall D. Fisher, Vice President and General Counsel of the Company. Mr. Kailbourne chaired the meeting and Mr. Fisher acted as secretary.

Next, the directors reviewed drafts of minutes of meetings. Because the Secretary had not received review comments from Mr. Gelber, the meeting minutes of May 2, 2002 were tabled for review until the next meeting. After the Chairman received a motion and second for approval of the May 5, 2002, minutes, those minutes were approved.

After the Chairman received a motion and second for approval of the May 6, 2002, minutes, those minutes were approved.

At this point, Pete Metros joined the meeting. After the Chairman received a motion and second for approval of the May 9, 2002, minutes, those minutes were approved.

After the Chairman received a motion and second for approval of the May 14, 2002, minutes, those minutes were approved.

After the Chairman received a motion and second for approval of the May 15, 2002, minutes, those minutes were approved.

After the Chairman received a motion and second for approval of the May 18, 2002, minutes, those minutes were approved.

Review of the minutes of the May 22, 2002 meeting was tabled until the next meeting to allow counsel for Mr. Venetis to submit Mr. Venetis' suggested revision to reflect his understanding of his participation in that meeting.

A-RA015383

## BOARD OF DIRECTORS MINUTES – JUNE 1, 2002

After the Chairman called the meeting to order, Mr. Kailbourne first welcomed Mr. Tow and Mr. Schneider to the Board of Directors meeting. Then, upon a motion and second, Mr. Tow and Mr. Schneider were then elected to the board of directors.

The Chairman then reviewed a motion dealing with the resignation of John Rigas, Mike Rigas, Tim Rigas and James Rigas from each of their officer positions with Adelphia Communications Corporation and all related subsidiaries. Following that review and after a motion and second, Chris Dunstan was elected as Executive Vice President, Chief Financial Officer and Treasurer of the Company and all its related subsidiaries. In the same motion Steve Teuscher was elected Senior Vice President, Controller and Chief Accounting Officer of the Company and all related subsidiaries. (See Attachment A to minutes and incorporated by reference herein.)

The Chairman then directed the Secretary to ensure that an appropriate Form 8K is released to the public confirming the appointments.

The Chairman then reviewed a resolution declaring the need for new signatures for all bank accounts for the company. After a motion for approval of the resolution and second was received, the resolution was adopted unanimously. (See Attachment B to minutes and incorporated by reference herein.)

The Chairman then reviewed the need to retain the firm of Lazard, Freres & Co. LLC, ("Lazard") as a second financial advisor to the Company to assist it with liquidity issues. Mr. Stengel, at the request of the Chairman, discussed the current relationship with the firm and the advantages of expanding that relationship, considering the Company's current liquidity crisis. Mr. Stengel then discussed the difference between Lazard and the other financial advisors currently employed by the Company. He also discussed the revised terms that would be put in place with Lazard if Lazard's role were expanded per the discussion. The Chairman asked for advice from the directors and indicated that management will review the terms and conditions of the proposed engagement.

The Chairman then discussed additional governance needs of the Company. He sought approval to name Mr. Coyle as chairman of the Audit Committee and Mr. Tow and Mr. Metros as members of that committee. He sought approval to name Mr. Coyle as chairman of the Compensation Committee and Mr. Gelber and Mr. Metros as members of that committee and he sought approval to create a Nominations Committee with Mr. Gelber as chairman of that committee and Mr. Tow and Mr. Coyle as members of that committee. Mr. Tow stated that he would accept the appointments to the committees conditioned upon approval by his counsel. With that reservation, the Chairman received a motion and second and all committee appointments passed unanimously.

Following that motion, the Chairman received a report from Mr. Gelber, the chairman of the Special Committee of Independent Directors ("Special Committee"), outlining its investigation of the related-party transactions which occurred within the Company, discussing both its appropriate reporting of those transactions, and other issues

A-RA015384

ADELPHIA COMMUNICATIONS CORPORATION
BOARD OF DIRECTORS MINUTES – JUNE 1, 2002

surrounding its investigation. Mr. Gelber reported that he had described to officials at the Securities and Exchange Commission and the Justice Department the progress of the investigation of the Special Committee, including the agreement between the Rigas Family and the Company regarding the family resignations as Directors of the Company and as officers of the Company. Mr. Gelber indicated that the officials with whom Mr. Gelber had met appeared satisfied at the progress of the Special Committee. Mr. Gelber then read a resolution from the Special Committee that had been approved unanimously stating that John Rigas, Mike Rigas, Tim Rigas, Peter Venetis and Jim Brown had deliberately breached their duties to the Company and its shareholders by failing to cooperate with the Special Committee in its investigation by declining to provide full and complete answers to the Special Committee and by participating in related party transactions for their benefit to the detriment of the Company without appropriate disclosures and approval of the Board of Directors. As a consequence, such officers and directors were no longer entitled to the advancement of defense expenses under the Company's Bylaws. (See Attachment C to minutes and incorporated by reference herein.)

      Mr. Venetis objected to the assertion that he had failed to cooperate with the Special Committee, stating that neither he nor his attorneys had appropriate notice of the needs of the Special Committee and that he had every intention of cooperating with the Special Committee and its requests in the immediate future. Mr. Auerbach asked that the Board table action on Mr. Venetis until a future date, giving Mr. Auerbach and Mr. Venetis the opportunity to schedule discussions with the Special Committee at a mutually acceptable time. Mr. David Boies then advised the board of

REDACTED

3

A-RA015385

ADELPHIA COMMUNICATIONS CORPORATION
BOARD OF DIRECTORS MINUTES – JUNE 1, 2002

At 11 a.m., financial advisors and additional legal advisors to the Company joined the meeting. They included Christina Mohr and Dan Richards from Salomon Smith Barney ("Salomon"), Tony Whayne of Credit Suisse First Boston ("CSFB"), Brian Devey of Daniels and Associates ("Daniels"), Al Garner and David Kurtz of Lazard, Freres & Co. ("Lazard"), Carl Rothenberger and Bruce Booken of Buchanan Ingersoll, P.C. ("Buchanan") counsel to the Company, Myron Trepper and Marc Abrams, Holly Youngblood and Maurice Lefkot, of Wilkie Farr & Gallagher, ("Wilkie Farr") counsel to the Company, joined the meeting.

The Chairman stated that he first wanted to discuss the liquidity status and cash forecast of the Company and asked Mr. Dunstan to lead that discussion. Mr. Dunstan indicated that barring bridge financing, the Company had two to three weeks of remaining cash to fund its operations. Mr. Dunstan then reviewed with the directors the issues surrounding projected negative cash flow for the Company.

Mr. Dunstan reviewed the projected cash needs of the Company for the balance of the year as being approximately $1.2 billion before certain discretionary items. He indicated the Company's suppliers and other creditors could force disruption of services if resolution to the cash issues is not found. Mr. Dunstan then discussed short-term options available to the Company. The directors reviewed the information and discussed other options available to the Company.

The Chairman then asked for an update from Ms. Mohr of Salomon regarding the status of potential bridge financing and/or asset sales to create a liquidity event for the Company. Ms. Mohr led a discussion of the status of efforts of the advisors to create an asset sale with Charter, Insight, and Texas Pacific Group, with associated bridge loans from both groups. Mr. Kurtz reviewed the status of efforts to obtain bridge loan financing from CSFB. Ms. Mohr reviewed a handout that discussed each of these groups and their respective financial capabilities and related due-diligence efforts. (See Attachment D to minutes, and incorporated by reference herein.)

Ms. Mohr stated that other groups had indicated an interest in participating in either financing or acquisition options but were waiting for the Company to resolve through waivers the existing defaults on its outstanding debt before those groups would participate. Mr. Tow questioned whether the proposition was put forward as a partial asset sale or a complete sale of the company. Mr. Kurtz explained that the proposition was a partial sale. Mr. Tow stated that the better approach was to offer to sell the whole Company and that some form of binding control of the sale could be handed to a lead bank to get them to assist the Company.

The directors then discussed various options with the advisors and discussed whether a proposed asset sale to Charter or any of the bridge financing options would be sufficient enough to avoid a liquidity crisis. Mr. Tow then asked the advisors to compare the properties that the Company was offering against the properties offered by AT&T to Comcast in those companies' recent merger. After hearing the comparisons, the directors

4

then discussed the advantages and disadvantages of a complete sale of assets versus a partial sale and subsequent restructuring of the balance sheet.

The Chairman then turned to Mr. Trepper to discuss other options available to the Company.

# REDACTED

At 2 pm, the Chairman reconvened the meeting without financial and certain legal advisors.

Mr. Kailbourne and Mr. Dunstan reported to the directors regarding the potential for some miscellaneous asset sales and the availability for disposal of some public securities, which could raise in excess of $10 million in cash to support the Company's short-term working capital needs. The directors approved selling 374,043 shares and 187,023 of warrants of Motorola and placing for sale 2,818,045 shares of United GlobalCom, Inc..

The Chairman also indicated that the Company's G3 aircraft has been grounded and that the Company would seek to liquidate that asset in the most effective manner for the company. Mr. Dunstan then discussed the ability sell timber assets at between $15 and $20 million. After hearing a motion and second, the board approved the pursuing of a sale of those assets.

The directors then discussed the status of a planned buyout of ML Media out of the Puerto Rico partnership in September, and the related attempt by ML to accelerate the sale immediately based upon their assertion of a change of control of the Company. The directors discussed options available to the Company and strategies to take. Mr. Kailbourne indicated that a letter was due to ML by 5 p.m. Monday after Friday's meeting and that the Company would be seeking a standstill agreement and would bring to the Board the appropriate terms of negotiating with ML on this transaction.

The Chairman then summarized the Company's options in view of its significant liquidity crisis. A general discussion ensued. Mr. Tow stated that the directors need to consider selling all the assets. He stated that the best option would be to find a large bridge facility of at least $1 billion that provides for a disposition of the Company in its entirety. He said the bridge loan effort must be led by an institution that commands respect in the financial community. He told the directors that he believes an institution with marketplace respect would facilitate obtaining waivers and gathering the support of other financial players to participate in the venture. He said if that institution could be found, then the directors could bring the current crisis to a halt. Mr. Tow proposed the board authorize him to contact certain institutions to discuss their interest in such a role.

A-RA015387

ADELPHIA COMMUNICATIONS CORPORATION
BOARD OF DIRECTORS MINUTES – JUNE 1, 2002

The directors then heard from Mr. David Boies regarding

**REDACTED**

After further discussion by the directors, the directors agreed to authorize Mr. Tow on behalf of the Company, to seek financial institutions that would discuss a bridge loan of sufficient magnitude to satisfy the Company's working capital needs, with the provision that the bridge loan provider would be given certain covenants to allow it to force the sale of the entirety of the Company in an orderly manner.

Mr. Tow then inquired about the status of the Form 10K and asked for a copy of the latest draft for his review prior to his meetings with appropriate financial institutions.

The directors then discussed the status of the Company's investment in the Buffalo Sabres, the team's interdependency on the Company's cash management system, its relationship with the Company 401K plan, and Company insurance programs. The directors also discussed notification to the team that it would cease funding its payroll as of May 31, 2002. The Chairman said that discussions were ongoing with the Rigas Family about selling the team.

The Chairman also discussed the status of meetings with Deloitte & Touche, LLP, to seek the audit firm's resumption of the audit of the Company. The Chairman told the directors that there would be more discussions in the next week.

The Chairman also discussed the Company's interdependency with Adelphia Business Solutions and Company efforts to reach arm's length transactions with that company. The Chairman also promised the directors a report at a subsequent meeting regarding the status of the 401K trustees. He stated that the two trustees have resigned but that would not be effective until two new trustees have been appointed.

The Chairman, upon advice of counsel, requested that Mr. Fisher meet with the Special Committee to review requests of individuals for indemnification. Mr. Gelber told the directors he would convene a meeting of the Special Committee immediately following the conclusion of the regular meeting to review those requests.

The directors then returned to the issue of indemnification for Peter Venetis. Mr. Gelber told the directors that his failure thus far to cooperate with the Special Committee Investigation (including missing the deadline of yesterday that was set by counsel for the Special Committee to work out any cooperation) and his involvement in related party transactions including the use of the Company's New York City apartment without compensation constitute breaches of duty to the Company, which warranted the determination that Mr. Venetis was not entitled to the advancement of defense expenses under the By-laws. Mr. Gelber then stated that Special Committee encouraged Mr.

A-RA015388

Venetis to take advantage of the opportunity to come forward to meet with the Special Committee and to have him fully explain his issues to the investigators.

There being no further business of the directors, the meeting adjourned.

Respectfully Submitted,

*Randall D. Fisher*

Randall D. Fisher
Acting Secretary

A-RA015389