# Exhibit 37

Erkie Kailbourne, Chairman, Dennis Coyle, Les Gelber, Leonard Tow, Scott Schneider, Peter Venetis
Randy Fisher
Craig Miller, Steve Fraidin, Fried Frank
David Boies, Chris Boies, Phil Korologos

Chris Dunstan, Ron Stengel

Martin Auerbach,

Order, 10:02

Asked if comfortable with attorneys present. Number of things to go through. Approval of minutes. Drafts sent through.
Tow & Schneider table for all since no knowledge.
May 2 meeting. Tabled.

May 5 meeting. Moved & seconded.

May 6 meeting Moved & seconded

Pete Metros joins.

May 9. Moved & second

May 14. Moved & second

May 15. Peter Venetis comment never seen Charter since first circulated. Motion and second. Approved.

May 18. Moved and second.

May 22. tabled for now.,

Motion and second electing Leonard and Scott to board.

Motion on officers resigning and election of new officers. Read motion. Chris Dunstan and Steve Teuscher. Elected to offices, Back ground from Chris, Background from Steve, Motion and second elected unanimous.

Form 8K for electing new officers.

Resolution for signature powers. Moved and second.

Discussion on retaining Lazard. Ron Stengel presented. Lazard retained by special

committee to advice on restructuring. Discussion of terms. 225 per month credited against overall restructuring fee of 5 million. As time gon on. Alternative of chapter 11, Lazard aond company wanting to redefine roll reporting to board as well as special committee. Put forth an engagement letter staying in restructuring roll and ending fee structure. Where if out of 11 then 10 million and 15 million fee if go through chapter 11. In 11, scope of work changes and expands. Question of existing relationships, Saloman barred in 11 because previous underwriter. Question of what about financial relationships, Question of what circumstances engage lazard and 10 million fee. Asking Lazard to come in on top of saloman. Different service than solly providing and incremental service. Lazard handling restructuring and workouts with banks.

Discussion of other engagement. Discussion of Lazard and Solly. Working well together and no overlap of fees (LG). PV, does company want to signal anything before it is ready to? Already aware of Lazard roll. Already working with banks. LG.

Discussion of audit committee. Dennis as chair, Leonard and Pete
Discussion of comp. Dennis as chair, Les and Pete
Discussion of nominations committee: Les as chair, Leonard and Dennis moved and seconded. Subject to counsel approval by LT counsel.

Discussion of liquidity.

Report from Special committee. Meeting Wednesday of this week. US Attorney's office, Chief of the securities fraud division Richard Owens and two colleagues. Progress as a company. Walked through agreement with the Rigas Family. Pleasure at what happened and progress at company opened up dialogue and have information flow two ways.

Reimbursement shall cease that board of directors reimbursement shall cease etc.

Given lack of cooperation, etc. and advice of counsel, SC, finds that John tim Mike Peter Venetis, Jim Brown no longer eligible to receive reimbursement.

Record unanimous recommendation of special committee.

PV attorney, discussion that there was an early effort to communicate through counsel that was representing all of them. Communication not being communicating to Peter. Peter thought to not cooperate. Been in communication with counsel as to issue. Do not believe that type of communication is that of not cooperating. Not aware of any factual grounds that committee is entitled to not advance counsel fees. LG – number of instances and to extent they disagree, can communicate to Covington. Argument that but for PV, some disclosures in 8k would not be there. Issues under review and have to be analyzed. Concept of advancing indemnification, more arguments. Benefit to every member of the board. Peter has provided an undertaking, conference call w/others. Having worked diligently through night on 8k, reflects Peters fulfilling his obligation as a director. To extent sc discussion w/counsel reflects an absence of awareness of his difference from

problems. Restricted payments from subsidiaries, etc.

Christina Mohr. EEK asked for update.

Asset Sale: Page 4, tab 1. Advisors were asked to proceed with sale. 24 confinanciality agreements out. Details, in terms of instructed to proceed with Boston south. Did not proceed because of company. Directed to work on other issues. Onqoing liquidity issues required us to turn to short term issues. Ongoing covenant issues limit access to fund. Lower ebitda from 1.6 to 1.4 because of changes. Reduced liquidity, contacted by a number of financial sources to "help" in this situation. Charter, Insight, Texas Pacific Group. Other sources want to help but difficulty of moving in parallel, kept other in arms lenghth. Apollo has done some work, Sequel three, no agreement. Microsoft, Oak Hill, waiting in wings. Others, waiting on bank and bond waivers in hand.

Once have waivers, interest goes way up.

Page 6 helps explain some of the issues, quick primer on corp. capital structure. Debt at parent, Acc operations, then bank debt below acc ops.

Reason showing chart, cannot access bank facilities. Borrowing capacity at FVOP llp level. Could be transferred up to parent. Started at 250 m. and reduced once learned about performance of that sub.

Board pass resolution to designate and file with trustee. Done.
Did not do calculations. Trying to reconstruct. Did not pass first of two tests, second test has two prongs, still working

Question of Scott, discussion.

FVOP has restrictions on moving money. Given cash management, probably violation. Williing to lend into defaulted structure, but not structure that prohibits violation.

Remaining issue (something)

Further due diligence 155 m. ebit and ___ in debt. 700k in Kentuck and Ohio. Really at best 500 million.

Legal issues probably trump economic issues. To remind ourselves of what we are looking at…

6.8 billion of bank debt. 7.1 b. all .

Other discussion.

Total debt to ebit. Senior and bank level, north of 10 on projected. Total north of 11. on

LQA basis somewhere north of those levels. Unencumbered assets but no access until cure.

Once one cures the default, on the margin access to additional capital and other means. Until such time as obtain additional bank waivers.
Section 2, summarizes on some bank proposals.
Six different bank syndicates, six agents and six different arrangements.

Best results, get banks to support as bridge to asset sales.

Met w/ all. May pitch, massively over secured, should be able to convince to step up and lend to asset sales. Asked for 750 million. Pursuing other options and looking at bankruptcy. Out commitments and in, none. Hired Polycon and etc.

Reported through polycon, no desire to force bankruptcy, not going to push us in and not stand in way of other players, but unlikely to support with additional funds.

Pushed back, to lend $ to payout subordinated debt doesn't work. Also too unstable. W/n day maybe convince to come up w/ 50 to 75 million.

LT: what proposition put forward. Tell them to sell whole company.

No said asset sale.

LT: suppose said period for order then said close out completely.

David Kurtz, push back was nothing we can do in bankruptcy to force you to sell assets.

Only glimmer of hope CSFB. Try to work to sponsor senior facility for 1 billion.

Not clear that even if could get them to sponsor, not sure workout types would do it. Subordinating to interest at 400 million. On asset sales not sure you get there. And if sell Los Angeles, who really gets the money.

Believe other better bridge lenders than CSFB. Could make enforcement over to Bridge lender.

If say anything less than sell everything, get no help.

How long take to get bond waivers, at least three weeks.

Bridger going to give most assistance. Didn't talk to anyone that had bad intentions. Equity holders will support. I think banks will go with them.

CSFB, been talking regularly, understand constraints, will get go or no go middle of next

Len Tow. Question of if take acc package as a whole versus old tci package, att had more major market, acc had more major growth areas. LT, see good comparable. Expectations that christina has described are jaundiced and low and reflect lack of competition. Maybe carry value for the good parts are less because splitting package.
Looking at range relects portion of LA market LT discussion of approach to sale.

Discussion from Les.  Discussion of market, discussion of options from other companies,

Discussion of Texas Pacific Group.

Stage One,

Stage two,

Minimum take combination of debt and warrant. Could own as little as 15 percent and as much as 48 percent. Expensive money.

Page 26 thought process.

Page 33. Discussion of bond holder waiver. Timing 10 days as part of process. If particular issues come up, cash and non-cash compensation. Bondholders being sought and trying to understand voting groups.

Discussion of page 34

Discussion of Page 35

Discussion of Page 36

Bond holder discussion Thursday. Hire someone. Call 17 minutes. Two threshholders, call sponsored by groups. David Kurtz. By Tuesday hired financial advisor and law firm . Cap ri is leader. More discussion.

Peter V. Delisting effect process? Contacted indenture trustee. Trying to resign because they are in syndicate. Impression not trying to launch anything with regard to their rights. (Myron Trepper). No immediate sense of invasions on that venue. Other than cash issues, other issues on the table due in next 30 days. Have to be woven into process.

EEK—turn to Myron for other options.

Every thing doing focused on M&A process. Focus on that. Shifting duties of directors of what must do if in insolvency. You are now there. Part of record that is what board has been doing and will continue to do. Condition of company and records of company, need waivers on everything waivable, whether we know about it or not. Solicitation success on

Charter a challenge. Whether attitude would change if bigger commitment, interesting issue. Have worked through issues more discussion. Have no doubt that there is a boat load of debtor-in-possession financing available for a very safe financing vehicle. Have been having discussions every day about what happens to their clients. Business people think it is a positive event.

Programmer issues are manageable, but have to do some handholding.

2pm Reconvene:

To quit at 4 pm.

Have some asset sales, some liquid securities. 6million Motorola. _____ something else. G3, only about 6 million. 40 on market now. Rebuilt, etc.

Timber can move quickly. 15 million, 20 million close in ten days.

Motion and second on timber.

Cash there, but be frozen. Settlement to buy out 275 million in september, but want to accelerate. Leonard Tow. One or two sellers.

LT, not sure they would take less. On operating side, keep taking management fees, not reporting to anyone, so in no hurry.

EEK: have time to work through.

Significant liquidity crisis. Have real dollars through June 15. Real issue to make determination to provide liquidity and strategy going forward. Is there someone who would put in 150 at front end to create time for 1b to come in to then lead to sales.

From internal operating perspective, have control.

June 15, not far off. Charter soft on front end and back end. TPG getting soft on back end. Insight too far off.

Need to discuss options. LT put up one, need to consider all.

LT got to consider and endorse a number of options. Best option large bridge that covers 1.billion and disposition in entirety and contemplates someone in willing form that

commands respect. Assessment of someone who would step up, herd instinct will take over. Must be firm commitment of measure of control for timing of disposition and assurance that board will agree. Bring whole crisis to screeching halt. In manner in which done, won't take much for institution to step up.

Dealing with financial players who progress to greater neediness, terms get more onerous. Discussion of commitment, but then still have options.

Peter Venetis discussion

Had discussion with Lazard and other financial players. LG, I like the logic of the option.

LT, reluctant to hold discussions unless those conversations are going to fly.

You have to be ready to say yes. They will have to help us with money and help us get the waivers.

LT put it in some form that gives me my papers then I am preparing to go.

LG, If I understand, want commitment to sell all assets and phase

PV, at what point regroup.

LG, can't do it. Have to be committed.

EEK—want to do it shoulder to shoulder.

LT – no, want to do it alone.

EEK – thought would add strength to it.

LT – If doesn't happen this week, isn't going to happen. Want to be able to say they have given me this authority.

EEK – Other colleagues.

LG – You will keep us informed.

[redacted]

LT – they may say we'll do, but they will want to peek at the books.